[L. A. No. 8322. Department One.—September 26, 1928.]

# DAVID S. UNRUH, Respondent, v. MILTON KAUFFMAN, Appellant.

Woodruff & Shoemaker and Clyde C. Shoemaker for Appellant.

Bradner W. Lee, Jr., Bradner W. Lee and Kenyon F. Lee for Respondent.

SEAWELL, J.—The question presented by this appeal is whether the action brought against the stockholders of a corporation upon the personal liability provision of section 322 of the Civil Code for compensation for services rendered said corporation under a contract entered into by said corporation and the claimant is barred by the provisions of section 359 of the Code of Civil Procedure. The trial court held that it was not; hence the appeal.

In 1912, Milton Kauffman, appellant herein and a defendant at the trial, purchased a tract of unimproved land, consisting of about 2,000 acres and known as tract 2371, from the E. J. Baldwin estate for the purpose of bringing the same into a high state of development and offering lots and parcels thereof for resale in accordance with a plan of subdivision which he had in contemplation. David S. Unruh, a civil engineer, was acquainted with the lands purchased, as both he and said Milton Kauffman either had owned or did then own small tracts of land situate in the vicinity of said tract 2371 prior to the purchase of the latter by said Milton Kauffman. Kauffman and Unruh entered into an agreement whereby Unruh was to do the surveying, subdividing, laying out of and grading of streets and such other work of engineering as would bring said lands into a state of improvement and development that would make them readily marketable. Said improvement included the development of a water system for irrigation purposes of a capacity sufficient to produce upon said lands citrus fruits, as well as expensive land improvements not necessary here to describe. From the inception of the purchase of said lands by Kauffman it was agreed between him and Unruh, who consulted and advised with Kauffman in the matter,

that as soon as feasible a corporation was to be formed and said tract of 2,000 acres was to be conveyed to it in consideration of a certain number of shares of stock of said corporation to be issued to said Kauffman as would be fair and just in the premises. Kauffman and Unruh agreed that in the meantime the latter should begin the work of construction, development, and subdivision as was forecast by the project. In furtherance of said plan the Valencia Heights Water Company was incorporated November 6, 1912, and by amended articles thereafter filed it became a mutual water company operated for the benefit of the land owners. Unruh commenced the work of construction, development, and subdivision during the fall of 1912. It was the agreement of Kauffman and Unruh from the beginning of their contractual negotiations that Unruh was to receive as compensation for all services rendered by him in connection with said tract 2371, comprising 2,000 acres of land, which services included the development of water, sinking of wells, building of reservoirs, laying out and grading of streets, subdivision, and other development work, a commission computed upon a sales price valuation of the lands to be fixed when the subdivision was finally completed and a map thereof was placed of record. Said map was recorded July 8, 1913. The method of fixing the basis of the compensation which Unruh was to receive for all services performed by him was orally agreed to in March of said year 1913. The corporation, which it was agreed from the first should be formed to finance and handle the project, was incorporated April 17, 1914, and was given the corporate name of Valencia Groves Company. The capital stock consisted of 500,000 shares. Only about 2,003 shares were fully paid for or issued. Practically all of said stock issue—1991 shares—was held and owned by Milton Kauffman. The other few shares were issued for organization purposes only. Milton Kauffman was the president-treasurer-manager of said corporation. It was understood between said Kauffman and Unruh from the commencement of their business engagements that Unruh was to receive as compensation for all services rendered by him two and one-half per cent commission on the sales price of the land. The oral agreement was definite as to the payment of two and one-half per cent commission, but was silent as to some of the subjects contained in the written contract

and lacked definiteness in a number of other respects. Kauffman declined to enter into a written contract with Unruh until the corporation was formed. Said contract was then made in the name of the corporation. This contract was entered into May 5, 1915, and expressly approved a prior verbal agreement or understanding existing between the corporation and Unruh whereby Unruh was to receive for his services for subdividing said property and for completing the construction and development work thereon a commission of two and one-half per cent computed upon the sum of $421,583.30, the agreed valuation of said lots, to be paid in installments at the time of the sale of said lots under whatever terms or conditions said lots should be sold or agreed to be sold. It was further stipulated that seventy-five per cent of the work required of said Unruh under his contract of employment had been done and that he had received as part payment for his services $875.31. Said contract further provided that the corporation "in consideration of the services performed and to be performed by the second party [Unruh] agrees to pay the second party the further sum of $9,663.90 at the times and in the manner hereinafter set forth . . . the balance remaining unpaid of said $2\frac{1}{2}$ per cent of the total valuation of said lots, according to the schedule of valuation hereinabove referred to." It was also agreed that if said amount, to wit, $9,663.90, or any part thereof, should remain unpaid for a period of two years from the date of said agreement, to wit, May 5, 1917, said amount or any unpaid portion thereof should immediately become due and payable; further, that if Unruh should within the period of six months from the date of said contract, to wit, November 5, 1915, and prior to the completion of his work, for any cause discontinue his services to the corporation within such time without the consent of said corporation and without its fault, then, in that event, said corporation should be required to pay only seventy-five per cent of any part of said $9,663.90 then remaining unpaid at the time of said discontinuance of services. Said contract also provided that if said Unruh should discontinue his services without the consent of said corporation and without fault on its part at any time within a period of one and one-half years from November 5, 1915, and prior to the completion of his work on said property, then the corporation

was required to pay him only eighty per cent of such sum as then remained unpaid; provided, that if the first party should at any time prior to May 5, 1917, or prior to the completion of the work on said property, dispense with the services of Unruh without his consent and without his fault, then he might demand from the corporation eighty per cent of the sum then remaining unpaid, which sum should immediately become due and payable to said Unruh and when paid to him should be in full settlement of any or all demands of said Unruh for services rendered by him. The above contract, in substance set forth, was executed in the name of Valencia Groves Company, a corporation, by Milton Kauffman, president, Ira W. Black, secretary, and David S. Unruh.

It is appellant's contention, putting it in his exact language, " . . . that the question of the defendant's statutory stockholders' liability is not affected by the later special contract in writing, dated May 5, 1915, and that the action, having been commenced on May 3, 1918, is barred by the provisions of section 359 and subdivision 1 of section 338 of the Code of Civil Procedure, as having been commenced more than three years after the liability was incurred by the corporation."

Appellant insists that the liability of stockholder Kauffman for practically all of the corporation's indebtedness to Unruh (sec. 322, Civ. Code) was barred by the three years' limitation prescribed by section 359 of the Code of Civil Procedure prior to the filing of said complaint, to wit, May 3, 1918. Appellant takes the position that all of the work performed by Unruh was completed prior to, or not later than the day on which the corporation was formed, to wit, April 17, 1914, and that whatever liability attached to Kauffman as a stockholder under preorganization oral agreements or other agreements thereafter made was barred before the action was commenced. This argument is buttressed on certain paragraphs contained in the written contract of May 5, 1915. We do not think that the interpretation placed upon the contract by appellant is sustained by the instrument considered in its entirety or that it should be so construed in the light of the circumstances of the transaction. It is true that the preamble of the written agreement makes reference to certain prior oral agreements, such as the rate of

commissions on the gross valuation of said lands and the percentage of the work completed at the time the contract was executed and the amount paid Unruh on account thereof, but it will be noted that in said preambulatory paragraphs provision is made for the completion of said construction and development work, and the first sentence of the contract following said recitals or preambles is the following: "Now, therefore, it is agreed as follows: The first party [corporation], in consideration of the services performed and *to be performed* by the second party [Unruh]. . . . " (Italics supplied.) Moreover, under the alleged previous oral understanding Unruh was to receive his commission in installments as and at the time of the sale of said lots, whereas by the terms of said written contract if any part of the commission computed on a $421,583.30 valuation of said tract 2371 should remain unpaid May 5, 1917, two years from the day of said contract, then said unpaid remainder was to immediately become due and payable. Other important covenants appear in the written contract which were not included in any parol agreement. In fact, there are a sufficient number of material agreements and conditions in the written contract which were not mentioned in the parol agreements as to have justified the trial court in finding them to be separate contracts. Besides, it is the clear development of the situation that the first engagements were but tentative understandings subject to change as the interests of the project would require. At best the oral agreements from the beginning were very little more than agreements or understandings between Kauffman and Unruh that a corporation was to be formed to handle the project and when formed their engagements were to be composed and reduced to writing. Neither party had at any time prior to the execution of the written contract a concrete, definite notion as to the exact form said tentative plans, as discussed through several years, would finally assume. Both seemed to rely upon the sound judgment and fair mindedness of the other and were willing and intended to abide the time when all of the tentative matters would mature into concrete form and substance. The record shows that Unruh did perform services after the written agreement was entered into and that he held himself ready to perform and did perform future services as in said contract provided. That the corporation encountered financial misfortunes was no fault of his and

he did not default in any of his agreements. ■ A letter written by the corporation as late as May 10, 1917, to the attorney of Unruh and signed by Milton Kauffman, president of said corporation, recognizes the services rendered by Unruh in practically the amount claimed by him. No error was committed in receiving it in evidence. It will be borne in mind that prior to the formation of the corporation Kauffman was the owner of the land which he placed upon the market and afterward he was the active manager of said corporation and owned all of its stock except ten or eleven shares held by his brother and the attorney for organization and administration purposes. His control of the corporation affairs was as complete and continuous after incorporation as it had been at any prior period.

Counsel for appellant relies upon *Hunt* v. *Ward*, 99 Cal. 612 [37 Am. St. Rep. 87, 34 Pac. 335], and *Coulter Dry Goods Co.* v. *Wentworth*, 171 Cal. 500 [153 Pac. 939], and other cases of that type as authorities here for a holding that the statute of limitations commenced to run against Unruh at the moment of, if indeed not prior to, the formation of the corporation, on the theory that corporate liability then attached. We think those cases cannot be accepted as aids to the appellant in consummating respondent's defeat under the circumstances of this case. The facts herein are widely different from those treated in the cited cases. The application of the rule in those cases was proper. In the instant case it would be inappropriate and bring about an inequitable situation and one not originally in the contemplation of the parties.

■ The court did not commit error in permitting the plaintiff during trial to file an amended complaint. That was a matter largely within the discretion of the trial court and the defendant did not lose any substantial right thereby.

■ As to whether Kauffman was the owner of all the stock which stood in his name or that his uncle and another were the owners of a portion thereof and Kauffman held the same as trustee for them, was a question of fact to be determined by the trial court. It cannot be said that there is no evidence to sustain the trial court's conclusion on this and other issues presented upon the trial.

The judgment is affirmed.

Curtis, J., and Preston, J., concurred.