[S. F. No. 12835. In Bank.—July 17, 1929.]

JOSEPH L. STEWART, Respondent, v. LOUIS E. EN-GELBERG et al., Appellants.

William F. Rose and R. C. Young for Appellants.

Arthur L. Shannon for Respondent.

PRESTON, J.—Action upon stockholders' liability for corporate indebtedness (Civ. Code, sec. 322).

Plaintiff sued each of the five directors of United Income Properties, Inc., a corporation, for a one-fifth of his demand. Issue was joined by all the defendants other than Ray B. Nisbet, who was not served with process. A jury was called

in the action and by its verdict fixed the corporate indebtedness at $25,000, and the share of each of the defendants at one-fifth thereof. Judgment passed for plaintiff accordingly. Defendants have appealed upon the full record.

The sole proposition requiring discussion is the claim of defendants that one Harry Klarman owned 254 shares of the subscribed capital stock of the corporation at the time the liability sued upon was incurred and from this fact it is contended that the liability of each of the defendants was a 1/259th instead of a 1/5th of said corporate debt. We agree with this contention of appellants, although we base our conclusion, shown by the following recital of facts to be justified, primarily upon a ground not urged by them:

On and prior to February 27, 1925, Harry Klarman and B. J. Klarman, his brother, were acting in concert to promote the erection at Twenty-eighth Street and San Pablo Avenue, Oakland, of a one million dollar structure to be known as the Boulevard Hotel. To that end Harry Klarman had secured an option on a building site, and on the date above mentioned he had caused to come into being said United Properties, Inc., a corporation, the charter of which named five persons to act as directors thereof for the first year. On March 17, 1925, at the first meeting of the board of directors, said Klarman proposed in writing to said corporation to assign to it his option for a certain number of shares of stock and a certain amount of money. By resolution of the board this offer was accepted, subject to approval of the state corporation department. On March 19th application was made to said department to confirm this arrangement and to authorize the sale of 12,741 shares of treasury stock to the public. The corporation department made certain objections to this transaction. Later and about April 28, 1925, at the second meeting of the board of directors of said corporation, said Klarman made in writing a second proposal designed to meet the objections of the corporation department. This new proposition was also promptly ratified by the board of directors, the essence of which arrangement called for the issuance to said Klarman of 254 shares of stock in exchange for said option and for promotion stock to the amount of 2,000 shares to be issued share for share as treasury stock was sold. On the same day an amended application for a permit was filed and there-

after, on May 6, 1925, a permit was duly issued, the material portions thereof here involved being as follows:

"United Income Properties, Incorporated, a California corporation, is hereby authorized to sell and issue 15,000 shares of its capital stock as herein below set forth: 1st. To sell and issue one share of its capital stock to each of its five incorporators, at par for cash, lawful money of the United States, for the uses and purposes recited in its application, and so as to net the applicant the full amount of the selling price thereof. 2nd. To issue to Harry Klarman, 254 shares of its capital stock, in exchange for the considerations recited in its application. . . .

"This permit is issued upon each of the following conditions: . . . (e) That this permit shall not become effective for any purpose unless and until said Harry Klarman shall execute his or their agreement in writing with said company (and file a copy thereof with the Commissioner of Corporations) in which he or they shall, in effect agree as owner of 2000 shares, herein authorized to be issued to him or them, that in the event of the dissolution or insolvency of said company, occurring while said shares shall be so required to be held in escrow, the owner of such shares shall not, without the consent of said Commissioner, participate in any distribution of assets of the company until after the owners of all other securities shall have been paid the full face or par value thereof. That prior to the sale of any of said shares said Harry Klarman shall duly execute an instrument in writing whereby he or they shall in effect agree to waive the payment and accrual of dividends on any of the shares issued to him or them, until such time as all stockholders, who have paid money for their shares, shall have been paid dividends at the rate of 8 per cent per annum for two consecutive years."

In a *bona fide* effort to comply with all the requirements of the corporation department, said Klarman submitted to the corporation on May 29, 1925, a letter accepting unreservedly the restrictions imposed by said permit, which letter, after reciting at length the said paragraph (e) above quoted, ended with the following language: "Pursuant to the foregoing, I hereby agree on behalf of myself, my heirs, executors, administrators and assigns to comply with each, every

and all of the foregoing provisions of said permit, and will in all respects conform thereto. Harry Klarman.''

Thereupon the corporation on June 2, 1925, took the following action with respect thereto: '' . . . 'The foregoing agreement is hereby accepted, confirmed and approved this 2nd day of June, 1925. United Income Properties, Inc., By Ray B. Nisbet, Vice-President.' On motion duly made, seconded and carried the following resolution was unanimously adopted: Be it resolved that the foregoing agreement of Harry Klarman be, and the same is hereby accepted, confirmed and approved, and the vice-president is hereby authorized and directed to formally execute on behalf of this company the said agreement of said Harry Klarman.''

A copy of the communication of said Klarman and a transcript of the above-mentioned proceedings respecting same were forthwith and prior to June 4, 1925, lodged with the corporation department, whereupon the corporation department communicated with said corporation respecting said waiver in the following language: '' . . . In re: United Income Properties, Inc. In connection with the agreements required to be entered into by Harry Klarman under the terms and conditions of the recent permit granted this company by this Department, you are advised that the proposed agreement of Harry Klarman does not constitute an actual waiver of his rights in case of dissolution and an actual waiver of dividends, and it is therefore unsatisfactory. . . .''

Thereafter, and on June 10, 1925, plaintiff, an architect, entered into a contract in writing with the corporation for the making of plans and the supervision of the construction of said projected hotel. But for reasons not necessary to here relate, the whole scheme failed and out of said contract arose this cause of action. The day following the execution of the contract, to wit, June 11, 1925, said Klarman re-executed a new waiver intended to comply fully with subdivision (e) of said permit and to meet the criticism of said corporation department respecting said former waiver, but in our opinion nothing of substance was added that had not been previously included in the waiver already on file.

From the above recital of facts it seems too clear for controversy that 254 shares of stock were on and after June 4, 1925, the date of filing of the first waiver, in the category of subscribed capital stock owned by said Harry Klarman.

Every condition of the permit had been complied with. The stock had been fully paid for; only the formal issuance of the certificate remained to be done, but this was not required to bind him. The whole scheme and plan was that of Klarman and his brother and it would be an undue submission to form and a disregard of substance to hold otherwise than that Harry Klarman was the chief stockholder at the time the contract with plaintiff was entered into. Indeed, Klarman and his brother negotiated the contract with plaintiff and why they were not made parties thereto is not thoroughly explained in the record.

We reach the same conclusion from another standpoint. Admittedly plaintiff did not consider the contract for architect's fees and other services as binding or subsisting until ratified by the officers of the corporation. This was not done until June 22, 1925. On this date all terms and conditions of the permit had been fully complied with, even to the extent of meeting the technical objection of the corporation department as to the form of the said waiver. On that date Harry Klarman was recognized as the guiding spirit and chief stockholder of said corporation. It may also be noted in this connection that on said twenty-second day of June, 1925, the defendant R. C. Young retired from the board and B. J. Klarman took his place. It seems but reasonable to hold that the liability to plaintiff was incurred on that day, June 22d, and not on June 10th, the date appearing in the caption of the contract. (*Unruh* v. *Kauffman*, 205 Cal. 238 [270 Pac. 440].)

From these two standpoints at least the judgment is erroneous and it is hereby reversed.

Curtis, J., Seawell, J., Richards, J., Waste, C. J., and Langdon, J., concurred.

Rehearing denied.

All the Justices present concurred.