The Anglo California National Bank of San Francisco, as Trustee for the Holders of Rialto Properties Company First Mortgage Six Per Cent Serial Gold Bonds, Plaintiff, *v.* Julius Klein and Leonard Bergman, as Administrators with the Will Annexed, etc., of Abraham L. Erlanger, Deceased, Defendants.

Supreme Court, Trial Term, New York County, November 30, 1936.

*Simpson, Thacher & Bartlett* [*Robert H. O'Brien* of counsel], for the plaintiff.

*John R. Lazenby,* for the defendant Julius Klein.

*I. Gainsburg,* for the defendant Leonard Bergman.

*Bernard Hershkopf,* of counsel for both defendants.

SHIENTAG, J. This action is brought against the defendants as administrators c. t. a. of the estate of Abraham L. Erlanger to enforce the liability of the decedent as a stockholder of the Rialto Properties Company, a California corporation. The alleged liability is based on article XII, section 3, of the Constitution of California as it existed from 1879 until its repeal in 1930, and on section 322 of the Civil Code of California as it existed substantially from prior to 1879 until its repeal in 1931.

On December 31, 1928, Abraham L. Erlanger gave to one Saul J. Baron full power of attorney to act for him in connection with a corporation that was to be formed in California. A specific provision of the instrument authorized the giving of a waiver of the benefit of the Statute of Limitations relating to stockholders' liability in connection with a financing operation to be undertaken by the corporation.

On January 17, 1929, the California corporation referred to in the power of attorney was incorporated as the Rialto Properties Company. Four days later the board of directors of that company, with the consent of the stockholders, voted to create a bonded indebtedness of $750,000 to be secured by a mortgage on the property to be acquired by the company. The bonds were to be dated February 1, 1929, and were to bear interest from that date.

February 8, 1929, Baron, in response to a telegram from the attorney in California who was handling the affairs of the Rialto Company, sent a letter by air mail stating that Erlanger was willing to subscribe to twenty-five per cent of the stock issued. At the same time Baron inclosed a waiver, executed by him, of the Statute of Limitations relating to the stockholders' liability in connection with the issue of the bonds. The board of directors of Rialto on February 16, 1929, voted to issue to Erlanger a certificate for 1,875 shares of stock. This certificate, dated February 16, 1929, was thereafter delivered in escrow to the Anglo and London Paris National Bank of San Francisco. The delivery was in accordance with the permit which the California Commissioner of Corporations gave to Rialto to issue capital stock. On February sixteenth Erlanger paid to Rialto $25,000 on his subscription to the company's stock, and later paid $312.50 on the same account.

On February 20, 1929, the deed of trust on the property that was to be security for the bond issue was delivered to the Anglo and London Bank, the plaintiff's predecessor; and on the same day the temporary bond of Rialto in the sum of $750,000 was delivered to the bank. On the same day, also, Rialto received payment of $711,125 against this bond. Permanent bonds were delivered by Rialto to the Anglo and London Bank on March 20, 1929. The deed of trust, the temporary bond and the permanent bonds were all dated as of February 1, 1929.

A default in the payment of interest on these bonds occurred November 1, 1931. On February 1, 1932, Rialto failed to pay $15,000 of principal of the bonds. On August 11, 1932, the plaintiff, which had been formed by a consolidation of the Anglo and London Bank and the Anglo-California Trust Company, and which had succeeded the first named bank as trustee, declared the whole principal of the bonds due.

A bondholders' protective committee which had been formed February 26, 1932, filed objections to the account of the proceedings of Saul J. Baron, temporary administrator of the estate of Erlanger who had died on March 7, 1930. The objections were filed in the Surrogate's Court in New York city on September 13, 1932. The bondholders' committee represented $271,500 of the $740,000 of bonds outstanding. (Ten thousand dollars of the bonds matured February 1, 1931, and were paid.) The objections to the account of the proceedings of the temporary administrator were treated as a claim against the estate. Notice to the committee to appear and prove its alleged claim was sent to its attorneys in California on October 28, 1932. The committee was dissolved in December, 1932, and did not appear to offer evidence in support of its claim. The claim was never rejected in writing. The referee disallowed the claim and his report was confirmed by the surrogate on July 10, 1934.

On February 1, 1933, the plaintiff commenced this action on behalf of all the bondholders, including the bonds held by the bondholders' committee. When the action was commenced the property which was security for the bonds had not been foreclosed. On September 17, 1934, the property was sold on foreclosure for $122,500. At the trial the plaintiff amended its complaint to a lege that this sale had been held, and to credit the proceeds on the amount due.

The defendants contend in substance as follows: (1) The repeal of the provisions of the California Constitution and Civil Code relating to the liability of a stockholder for certain debts of his corporation is a bar to the present action. (2) The liability of

stockholders becoming such after February 1, 1929, was here waived. (3) The cause of action is barred by the Statute of Limitations. (4) The action was prematurely brought and in any event the foreclosure sale did not realize the fair and reasonable value of the mortgaged property. (5) Plaintiff is precluded from recovering because it failed to proceed against the Rialto Company for a deficiency judgment. (6) Plaintiff is without capacity to bring this suit and is not the proper party in interest. (7) In any event defendants should not be held liable for the proportionate sum due on the bonds involved in the objections filed by the bondholders' protective committee in the Surrogate's Court, or for certain expenses claimed to have been incurred in the foreclosure suit and in the prosecution of the instant action. These contentions and matters incidental thereto will be taken up in order.

(1) The repeal of the provisions of the California Constitution and Civil Code relating to stockholders' liability is not a bar to this action. Before its repeal on November 4, 1930, article XII, section 3, of the California Constitution read in part as follows: " Each stockholder of a corporation, or joint-stock association, shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation or association."

Before its repeal on August 14, 1931, section 322 of the Civil Code, so far as is pertinent here, provided that " Each stockholder of a corporation is individually and personally liable for such proportion of all its debts and liabilities contracted or incurred during the time he was a stockholder as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation."

The repeal of the constitutional provision did not repeal section 322 of the Civil Code. This was expressly held by the Supreme Court of California in *Kaysser* v. *McNaughton* (6 Cal. [2d] 248; 57 P. [2d] 927 [1936]). With respect to the repeal of section 322, a saving clause was enacted providing:

" Section 1. Sections 322 and 322a of the Civil Code are hereby repealed.

" Section 2. The repeal of said sections shall not in any way impair or affect any remedy or any cause of action for any liability incurred or accrued under said sections prior to the time this act takes effect." (California Statutes of 1931, chap. 257.)

The defendants argue that this sav ng clause does not apply in the present case since no default had occurred before August

14, 1931, the date of repeal of section 322   Their theory is that the saving clause applies only where an immediate right to sue the stockholders existed at the time of repeal.   This contention was also decided adversely to the defendants by *Kaysser* v. *McNaughton* (*supra*).   That case held that a stockholder of a California corporation incurring a liability prior to August 14, 1931, and during the time that he was a stockholder, is liable to the creditors of the corporation in the proportion that the amount of stock owned by him bears to the whole of the subscribed capital stock.   The rule in this jurisdiction, in accord with the general weight of authority, is clear that such liability may be enforced against a stockholder residing in this State.   (*Howarth* v. *Angle,* 162 N. Y. 179; *Pacific Guano & Fertilizer Co.* v. *Opolinsky,* 135 Misc. 265; affd., 228 App. Div. 769; *Thomas* v. *Matthiessen,* 232 U. S. 221; *Blair* v. *Newbegin,* 65 Ohio St. 425; 62 N. E. 1040; *Bell* v. *Farwell,* 176 Ill. 489; 52 N. E. 346; Restatement, Conflict of Laws, § 190.)

(2) The liability of stockholders becoming such after February 1, 1929, was not waived.   This defense is predicated on the fact that the resolution creating a bonded indebtedness declared that it was to consist of bonds " all bearing date as of February 1, 1929," and all bearing " interest from said first day of February, 1929; ' that the deed of trust stated: " This indenture   *   *   * made and entered into as o  the first day of February," and that the permanent bonds issued by the company were expressed to have been executed " as of the 1st day of February, 1929."

These declarations fail to support the contention of the defendants.   The fact that February first is adopted in the various documents is capable of explanation on grounds other than the assumption that the selection of this date was intended as a waiver of the liability of stockholders becoming such after February 1, 1929.   The defendants' contention is especially difficult to maintain in view of the provision of the indenture, pursuant to which the bonds were issued, placing upon the Rialto Company the duty of obtaining a waiver of any statutes of limitation constituting a defense against the liability on the bonds " from the holders of not ess than ninety per cent of the whole of its issued and/or subscribed capital stock outstanding at the time of the *issuance* of the bonds to be issued hereunder."   And in the waiver of the Statute of Limitations signed by Erlanger's attorney on February 8, 1929, to satisfy the demand of the trustee, it is stated that all the bonds in question are to be dated as of February 1, 1929.   The indebtedness was actually incurred on February twentieth, four days after Erlanger's subscription to the stock was accepted by the board of directors of Rialto.

The fact that the certificate of stock issued to the decedent was delivered in escrow is immaterial under the California law. A subscriber to stock, although no certificate has been issued to him, is liable to the same extent as a stockholder. (*United States Nat. Bank* v. *Stiller*, 216 Cal. 324; 14 P. [2d] 78; *Stewart* v. *Engleberg*, 207 Cal. 595; 279 P. 661; *Western Pac. P. Co.* v. *Hollywood Topics*, 113 Cal. App. 305; 298 P. 35; cf. *Pacific Fruit Co* v. *Coon*, 107 Cal. 447; 40 P. 542.) And this liability is one that may be enforced against the estate of a deceased stockholder. (*Lininger* v. *Botsford*, 32 Cal. App. 386; 163 P. 63; *Damiano* v. *Bunting*, 40 Cal. App. 566; 181 P. 232.)

(3) The cause of action is not barred by the Statute of Limitations. The time within which an action may be brought is to be decided by the law of the forum. (3 Beale, Conflict of Laws, § 603.1.) Section 13 of the Civil Practice Act of this State provides that " Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of the time limited by the laws of a State or country where the cause of action arose, for bringing an action upon such a cause of action, except where the cause of action originally accrued in favor of a resident of this State."

Accordingly, the relevant provisions of the California law must be examined in order to determine whether the cause of action is barred in the State where it arose. The period limited by the statutes of California for the commencement of an action to enforce a stockholder's liability is three years from the time the liability was incurred. (Cal. Code Civ. Proc. § 359.) Under such provision the time for bringing this action has expired. The stockholder in this case, however, executed a waiver of the benefit of the Statute of Limitations. Under the California law this waiver is effective although it was executed at or before the inception of any liability. (*Dexter* v. *Pierson*, 214 Cal. 247; 4 P. [2d] 932; *Brownrigg* v. *DeFrees*, 196 Cal. 534; 238 P. 714; *Hammell* v. *Atkinson*, 79 Cal. App. 708; 250 P. 1117.)

Courts, in construing the effect of statutes similar to section 13 of the Civil Practice Act, which borrow the period of limitation of the State where the cause of action arose, have generally held that the law of that State applies with respect to other matters affecting the running of the period of limitation. (*Mechanics' Sav. Bank* v. *Fidelity Insurance*, 91 Fed. 456; *Klemme* v. *Long*, 184 Minn. 97; 237 N. W. 882; see 35 Col. L. Rev. 762, 770.) The courts of this State have applied the law of the State where the cause of action arose to determine the effect of absence of the defendant from the latter State (*Hanna* v. *Stedman*, 230 N. Y. 326; *Isenberg*

v. *Rainier*, 145 App. Div. 256; *Irving Nat. Bank* v. *Law*, 10 F. [2d] 721); and to fix the period by which the running of the statute is tolled upon the death of the defendant. (*Klotz* v. *Angle*, 220 N. Y. 347, 359.) The purpose of section 13 is to provide that no one can be sued in New York by a non-resident, if at the time he could not be sued in the State where the cause of action arose; if the action is not barred in that State it is not barred in New York so long as it is brought within the time limited by the general Statute of Limitations of this State. (*Isenberg* v. *Rainier, supra.*)

The effect of a waiver of the Statute of Limitations should, under the circumstances of this case, be determined by the law of the State where the cause of action arose. The provisions of the California law with respect to stockholders' liability were forcefully presented to the parties. An express duty was placed upon the Rialto Company to procure waivers of the benefit of the Statute of Limitations, and this constituted an inducing cause, and part of the security, for the creation of the bonded indebtedness. The entire transaction was carried on in California with the exception of the signature of the waiver of the benefit of the statute; and even after the waiver was signed certain blanks were left in it and the necessary data inserted in California. It is clear that all the parties were acting with the understanding that the California law would control. It would be manifestly unjust, therefore, to refer to the California law to determine the period of limitation and to ignore that law with respect to a waiver of the benefit of that period. Since the three-year Statute of Limitations in California runs from the date the debt is incurred, the statutory liability of stockholders of California corporations would be rendered nugatory in this State in all cases of long term corporate obligations unless effect were here given to a waiver of the benefit of the limitations statute.

A waiver of the Statute of Limitations which is executed before the inception of liability may not be valid with respect to a transaction that has all its contacts in New York. (*Shapley* v. *Abbott*, 42 N. Y. 443; *Watertown National Bank* v. *Bagley*, 134 App. Div. 831; *Crocker* v. *Ireland*, 235 id. 760; *Mutual Life Ins. Co.* v. *United States Hotel Co.*, 82 Misc. 632; *St. Andrews Parish* v. *Gallagher*, 121 id. 167.) These cases are persuasive authority, although none of them is a decisive holding on the point, that the rule in New York makes such waivers ineffective. There is no such strong policy, however, against a waive of the Statute of Limitations that a New York court should refuse to enforce a waiver that is valid in the State where the cause of action arose and where substantially the entire transaction took place.

In the present case it is unnecessary to decide whether the waiver is effective to prevent the defendant from setting up the general Statutes of Limitation of New York. The effect of section 13 of the Civil Practice Act is not to substitute the law of the State where the cause of action arose to the exclusion of the general New York Statutes of Limitation. (*Kahn* v. *Commercial Union of America, Inc.*, 227 App. Div. 82; *Kosolapov* v. *Russo-Asiatic Bank*, 144 Misc. 499; *Duggan* v. *Lubbin*, 131 id. 154.) For example, a cause of action arising on a contract in a State where the period of limitations, let us assume, is three years, would be barred in this State although we have a six-year Statute of Limitations in contract actions. But a cause of action in contract arising in a State where the period of limitation is thirty years is barred in New York when the action is brought more than six years after it accrued. (*Kirsch* v. *Lubin*, 131 Misc. 700; affd., 248 N. Y. 645.)

One of the cardinal purposes of applying the New York period of limitation as a secondary restriction is to prevent the prosecution of stale claims in the courts of this State. (3 Beale, Conflict of Laws, § 603.1) The laws of this State place upon the stockholders of a New York corporation no such liability as is involved in the present case. Consequently there is no period of limitation contained in the statutes of New York specifically directed at such a liability.

The action in the present case may be considered one to enforce a contractual liability (*Aronson & Co.* v. *Pearson*, 199 Cal. 286; 249 P. 188; *Kaysser* v. *McNaughton*, 6 Cal. [2d] 248; 57 P. [2d] 927, 932; cf. *Howarth* v. *Angle*, 162 N. Y. 179) or an action to enforce a liability created by statute. (Cf. *Platt* v. *Wilmot*, 193 U. S. 602.) In either event the cause of action in the present case cannot be considered stale since the action was commenced well within the provisions of section 48 of our Civil Practice Act:

" The following actions must be commenced within six years after the cause of action has accrued

" 1. An action upon a contract obligation or liability express or implied, except a judgment or sealed instrument.

" 2. An action to recover upon a liability created by statute, except a penalty or forfeiture."

No greater effect is given to the waiver of the Statute of Limitations in the present case than to extend the three-year period limited by the California statutes. The waiver need not be construed to extend the period which the Legislature of this State has laid down as marking the time within which a claim may be considered worthy of pursuit. Accordingly, the present action, which would not be barred in California, is not barred in this State.

(4) This action was not prematurely brought. Under the California law no obligation to pay the principal sum of the bonds exists against a mortgagor until the property that is held as security for the loan is sold. (Cal. Code Civ. Proc. § 726; *Bank of Italy Nat. Trust & Savings Assn.* v. *Bentley*, 217 Cal. 644; 20 P. [2d] 940; certiorari denied, 290 U. S. 659.) In other words, no cause of action to recover the principal sum existed against the Rialto Company except for the deficiency that was due after a sale of the mortgaged property. Since no sale had taken place at the time this action was begun the complaint did not state a cause of action against the Rialto Company. (*Bank of Italy Nat. Trust & Savings Assn.* v. *Bentley, supra.*) The defendants maintain that, therefore, it did not state a cause of action against the stockholders of Rialto.

Adverse to the defendants' contention is the case of *Bank of America Nat. Trust & Savings Assn.* v. *Cryer* (83 Cal. A. D. 57; 49 P. [2d] 864, 865), decided after the decision in *Bank of Italy Nat. Trust & Savings Assn.* v. *Bentley* (*supra*). In the *Cryer* case the stockholders were sued before the mortgage had been foreclosed. The court said: " It is contended that the action was prematurely commenced, since the mortgage had not been foreclosed when the complaint was filed. This contention cannot be upheld. A stockholder's liability is enforceable independently of proceedings against the corporation. It was not necessary to first foreclose the mortgage in order to recover against the stockholders. *Aronson & Co.* v. *Pearson,* 199 Cal. 286; 249 P. 188; 51 A. L. R. 1380; *Chambers* v. *Farnham,* 182 Cal. 191; 187 P. 732; *Fry* v. *Baltimore Hotel Co.,* 80 Cal. App. 415; 252 P. 752; 6 Cal. Jur. 995. Respondent stockholders argue that the corporation guaranteed only the amount to be found due by a deficiency judgment. We cannot take this view. The language used in the instrument is clearly a promise to pay the obligation as a whole, without qualification and without limitation to a possible deficiency. Although the right to sue is not affected thereby, it might be added that the mortgage was in fact foreclosed before the present action was brought to trial, and the judgment rendered against defendants is for the respective amounts due on the deficiency after sale of the property. These matters are set forth in a supplemental complaint." (See, also, 6 Cal. [2d] 485; 58 P. [2d] 643.)

The defendants contend, however, that section 322-a of the Civil Code of California, providing for subrogation of the stockholder to the rights of the creditor, makes it necessary to apply the rule in *Bank of Italy Nat. Trust & Savings Assn.* v. *Bentley* (*supra*) to a suit against the stockholder. If their contention is not adopted,

the defendants urge, the stockholder's right of subrogation against the corporation is worthless, unless the stockholder is allowed to foreclose on the security.

Before the trial of this action was commenced, the mortgaged property was sold, and at the trial the plaintiff amended its complaint to allege this sale. This corrects any defect in the complaint. Under the law as it stood before September 1, 1935, if no cause of action existed at the time the action was commenced, an amendment alleging facts occurring subsequently which would state a cause of action could not be allowed. (*Trempe* v. *Perlman*, 187 App. Div. 745; *Lafayette Trust Co.* v. *Peck*, 133 id. 370; *Rummell* v. *Blanchard*, 173 id. 695.) This is no longer the law. Under section 245-b of the Civil Practice Act, " the court may in its discretion permit a party to serve a supplemental pleading to set up any facts which occurred after the commencement of the action." The amended complaint alleged the sale and credited the proceeds thereof against the sum due on the bonds. The cause of action was thereby fully made out.

The amendment was allowed in the interests of justice. The defendants were not surprised by the amendment, nor did they request an adjournment. They amended their answer by pleading in substance as defenses: (1) That the foreclosure sale did not realize the fair and reasonable value of the mortgaged property; (2) that the failure of the plaintiff to bring suit for a deficiency judgment has barred the defendants from any action against the corporation should they be held liable in this case.

To substantiate their claim that the foreclosure sale did not realize the fair and reasonable value of the mortgaged property, the defendants assert that the assessed valuation of the property from July 1, 1933, to July 1, 1934, was $293,415; that this sum must be considered in the light of the finding made by the State Board of Equalization, pursuant to section 11 of chapter 642 of the California Statutes of 1931, that the assessed value of property in San Francisco county was only 44.38% of the true value. The defendants maintain that the true value was, therefore, in excess of $600,000.

A " true value " of $600,000 for theatre property does not necessarily mean that a forced sale of that property for $122,500 was unfair or unreasonable. Foreclosure sales in recent years have seldom realized the reasonable value of the premises sold. Mere inadequacy of price is not a sufficient ground for setting aside a foreclosure sale. (*Connick* v. *Hill*, 127 Cal. 162; 59 P. 832; *May* v. *Hatcher*, 130 Cal. 627; 63 P. 33.) The defendants have offered no evidence that there was fraud or collusion in this sale, or that it was carried on otherwise than in the regular manner.

(5) The plaintiff did not lose its right to recover against the stockholders because it failed to sue the Rialto Company for a deficiency judgment after the foreclosure sale. The Statute of Iimitations for such a suit is three months (Cal. Code Civ. Proc. § 580a) and that period has run without the institution of an action by plaintiff. Section 322a of the Civil Code of California, enacted in 1931, provides: "Any shareholder who because of his proportionate stockholder's liability under statutes heretofore in effect and not in discharge of his obligation to pay the full consideration agreed to be paid for his shares, has heretofore made or shall hereafter make any payment in discharge in whole or in part of any debt or liability of the corporation shall be subrogated to the extent of such payment to the claim of the creditor against the corporation."

The defendants assume that this statute places the stockholders in the position of sureties with respect to the debts owed by the corporation to its creditors. The California law is, however, that the liability of the stockholders of a California corporation to the creditors is contractual in nature and is a direct and primary obligation. (*Aronson* v. *Pearson,* 199 Cal. 286; 249 P. 188; cf. *Ellsworth* v. *Bradford,* 186 Cal. 316; 199 P. 335; *Neilson* v. *Crawford,* 52 Cal. 248.) The fact that stockholders are given a right of subrogation does not place them in the position of sureties, so long regarded as favorites of the law.

In any event there is nothing to indicate that defendants have been prejudiced in any way by the failure to proceed for a deficiency judgment against the Rialto Company, their own corporation. Nothing is alleged to show that their corporation had any assets with which to meet such judgment.

(6) The plaintiff has the capacity to bring this suit. Defendants contend that the deed of trust contains no provision assigning to or vesting in the trustee any right to sue upon the liability of the stockholders to the bondholders. The plaintiff's right to sue on behalf of the bondholders must be determined on the basis of the California law whether the matter be treated as the construction of an instrument relating to land (*Galland* v. *Schubert Theatrical Co.,* 105 Misc. 185) or a determination of whether the right to sue the stockholders is vested in the plaintiff by way of assignment. (*Jackson* v. *Tallmadge,* 246 N. Y. 133.) The testimony of the experts on California law called by both sides was in direct conflict on this point.

The deed of trust contains a provision giving the trustees the right to "institute foreclosure proceedings or take other legal or equitable action to collect the amount of said bonds with the interest thereon." (Art. VI, § 6.) Section 11 of article VI of the trust deed provides: "No remedy herein conferred upon or reserved

to the Trustee is intended to be exclusive of any other remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder, or now or hereafter existing at law or in equity or by statute."

The remedy given to creditors against stockholders is conferred by statute. (*Kaysser* v. *McNaughton, supra.*) There is also an express covenant in the deed of trust to pay princ'pal and interest to the trustee. Moreover, the waiver of the Statute of Limitations contains a covenant running to the trustee as well as to the bondholders not to interpose the defense of the statute to an action by the trustee or by a bondholder. The construction is reasonable, therefore, that the remedy to collect from the stockholders on their liability may be invoked by the trustee, the plaintiff herein.

In opposition to this conclusion the case of *Williams* v. *Carver* (171 Cal. 658; 154 P. 472) is cited. In that case the Superintendent of Banks of California, who was liquidating an insolvent bank, was held not to have the capacity to sue the stockholders of the bank upon their liability to the creditors. A California statute " to define and regulate the business of banking " had given to the Superintendent the right " to enforce the individual liability of the stockholders."

Three grounds were given by the court for this decision: 1. The Superintendent of Banks succeeds only to the rights and property of the bank; but the liability of stockholders to creditors is no part of such property or assets; the Superintendent, therefore, has no power to act for the creditors in pursuit of their claim against the stockholders. 2. The statute conferring on the Superintendent the right " to enforce the individual liability of the stockholders," means the liability of stockholders for assessments made by the bank, or for sums due on subscriptions to stock. 3. The Superintendent could not be entitled to sue the stockholders on their liability to the creditors without violating the constitutional provision that the title of each act must embrace its subject-matter. The liability of a stockholder to a creditor of the corporation has no relation to defining or regulating the business of banking.

*Williams* v. *Carver* (*supra*) is not decisive of the instant case. The second and third grounds for the conclusion there reached have no application here. The first ground of that decision is met in this case by the covenant to pay which ran directly to the trustee. The trustee is, therefore, in the position of a creditor and not one who has merely succeeded to the property and assets of the corporation.

Where a guaranty ran both to the bondholders and to the trustee, it was held that the trustee could prove a claim in bankruptcy against the guarantor. (*Matter of United Cigar Stores Co.*, 68

F. [2d] 895 [C. C. A.].)  A trustee who is the recipient of a promise to pay, even though he is to hold the funds for the benefit of the *cestuis que trustent*, is a creditor of the promisor.  If the trustee is a creditor of the Rialto Company, then it comes directly under the terms of section 322 of the Civil Code of California.  A realistic view should be taken of this problem.  It is to the advantage of the stockholders to have their entire liability arising from this issue of bonds settled in a single suit.  The bondholders likewise are benefited by the fact that the trustee, suing on behalf of all the bondholders, can afford to maintain actions without the State or to prosecute appeals.  A bondholder who owned but a few bonds could not afford to do this.  The case of *Mittleman* v. *President, etc., of Manhattan Co.* (248 App. Div. 79) is not authority to the contrary.

(7) The defendants also contend that they should not be held liable for the proportionate sum due on the $271,500 worth of bonds which were involved in the objections filed by the bondholders' protective committee to the account of the proceedings of Saul J. Baron, temporary administrator of the Erlanger estate.  These objections were treated as if they were a claim made against the estate, and a notice was sent to the committee to appear and prove its claim.  The committee did not appear; no rejection in writing was ever made; the committee's claim was disallowed.  The defendants contend that those bondholders who were represented by the committee have had their day in court and, although the defense of *res adjudicata* is not pleaded, that the action of the trustee, to the extent that it includes these bonds, should not be allowed.

It is clear from the decree of the surrogate that the claim of the committee was not rejected on the merits.  The action of the surrogate was in the nature of a nonsuit.  Since there was no determination of the merits of the alleged claim made by the committee, the bondholders whom it represented are not barred from having their claim adjudicated in this action.  (*Richard* v. *American Union Bank*, 253 N. Y. 166; *Nudelman* v. *Borden's Condensed Milk Co.*, 77 Misc. 103.)

The plaintiff is entitled to judgment for the relief demanded in the complaint.  The plaintiff's computation of damages is adopted except that the amounts claimed for legal expenses in prosecuting this action in the sum of $2,676.84, and for legal and trustees' expenses of the foreclosure suit in the sum of $3,417.61, are disallowed.  Judgment is accordingly directed in favor of the plaintiff for the sum of $212,562.54 with interest from November 30, 1936.  Exception to the defendants who are allowed a stay of execution of thirty days, and sixty days to make a case.  Settle order.