GUINNESS et al. v. MILLER, Alien Property Custodian, et al.

(District Court, S. D. New York. June 28, 1923.)

Payment ⬥12(5)—Recovery for breach of contract to pay in foreign money is measured by value of such money in money of the United States at time of breach.

An indebtedness by a German subject to an American citizen on a stated account, payable in marks, on recovery in a court of the United States, is measured by the value of the marks in American money at the time the account was stated and the right to indemnity for its nonpayment accrued.

In Equity. Suit by Benjamin Guinness and others, partners as Ladenburg, Thalmann & Co., against Thomas Woodnutt Miller, as Alien Property Custodian, and others. Decree for complainants.

Van Vorst, Marshal & Smith, of New York City (Alexander B. Siegel, of New York City, of counsel), for plaintiffs.

William Hayward, U. S. Atty. (Dean Hill Stanley, of counsel), for defendants.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEARNED HAND, District Judge. This is a suit under section 9 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e) by a citizen to recover a debt owed by a German on a stated account payable in marks. The sole question is whether the decree should be for the value in dollars of the marks when the account was stated, December 16, 1917, or for their value as of the date of the decree.

In the case of tort committed in a foreign jurisdiction it is pretty clear that the judgment should be based on the exchange at the time of the loss inflicted. In such cases we are familiar with the idea that his wrong imposes on the tort-feasor an obligation to indemnify his victim in money. A court of the sovereign where the tort occurs enforces this obligation in the money of that sovereign, regardless of its change in value, merely because those are the terms in which it is cast. When a court takes cognizance of a tort committed elsewhere, it is indeed sometimes said that it enforces the obligation arising under the law where the tort arises. And, if this were true, it would seem to follow that the obligation should be discharged in the money of the sovereign in whose territory the tort occurred, and that the proper rule would be to adopt the rate of exchange as of the time of the judgment.

However, no court can enforce any law but that of its own sovereign, and, when a suitor comes to a jurisdiction foreign to the place of the tort, he can only invoke an obligation recognized by that sovereign. A foreign sovereign under civilized law imposes an obligation of its own as nearly homologous as possible to that arising in the place where the tort occurs. But since, apart from specific performance, such an obligation must be discharged in the money of that sovereign, none other being available, the obligation so created can only be measured in that medium. The form of the obligation must therefore be to indemnify the victim for his loss in terms of the money of the foreign sovereign, and that obligation necessarily speaks as of the time when it arose; that is, when the loss occurred. Hence a foreign court is as little concerned with the changes in the value of money in the territory where the tort arose as are the courts of that territory itself. Each court is enforcing a different obligation, imposed by different sovereigns, necessarily defined in the terms of its own money.

In case of torts this has been generally recognized as the proper result. The Verdi, 268 Fed. 908; The Celia, [1921] 2 App. Cas. 544. The same considerations obviously apply to the breach of a contract resulting in unliquidated damages; at least, if the resulting obligation to indemnify the promisee be regarded as imposed by law, and not as an alternative performance. And even if the second notion be accepted, the alternative performance is not to pay a fixed sum, but generally to indemnify the promisee. Such a case was The Saigan Maru (D. C.) 267 Fed. 881, 893, where, however, exchange was fixed as of the date of the decree, a case with which I cannot go along.

The chief differences in the decisions arise in cases of contract to pay a fixed sum of money. Thus the same judge who decided The Verdi, supra, held in The Hurona (D. C.) 268 Fed. 910, that in that

case exchange should be taken as of the time of the decree. Some of the earlier cases are in accord, but the contrary was held in Page v. Levenson (D. C.) 281 Fed. 555; Hoppe v. Russo-Asiatic, 235 N. Y. 37, 138 N. E. 497; Société, etc., v. Cumming, [1921] 3 K. B. 459. Birge-Forbes Co. v. Heye, 251 U. S. 317, 40 Sup. Ct. 160, 64 L. Ed. 286, seems in fact to have involved the point, but can scarcely be considered as an authority, at least in the Supreme Court.

There is, in my judgment, no sound basis for distinction between torts and contracts to pay fixed sums of money. The confusion arises from the assumption that payment after the due date is performance. But that appears to be untrue. A promise to pay a sum at a given day is not a promise to pay then or later. When the promisor defaults, he fails to perform the only promise he has made, and his liability is as much a new creation of the law as though he had failed to deliver a chattel; or, if it be insisted that his liability is an alternative performance, still that performance is not to pay at any later time, but generally to indemnify the promisee, subject, of course, to the limitations imposed by law. That liability is, as it seems to me, quite analogous to the obligation to indemnify raised upon a tort, and the same reasoning should apply to it. A foreign sovereign will raise an equivalent obligation, but couched in terms of its own money, because that alone it has the power to secure.

A different rule it is true might be applicable if specific performance were possible in such cases. No doubt a sovereign might insist upon the delivery of foreign money, if the occasion were proper. On obligations to pay money, this remedy does not, however, lie. All that can be done is to seize the promisor's property, and sell it, a procedure which can result only in domestic money. To take the exchange as of the period of the judgment or decree is, therefore, to adopt a rule applicable only to specific performance, in a case where specific performance is not exacted. Since the loss is to be indemnified in the money of the sovereign where the court sits, it has no alternative but to calculate it in terms of that money when the loss occurred, and to enforce its judgment, regardless of variations in its value between that time and the date of collection.

It must be confessed that the law is as yet not settled in the federal courts; but, whatever be the true analysis, the indications are that the English and New York rule will eventually prevail. As this seems to me to accord with principle, I shall adopt it till it is settled otherwise. In the case at bar, therefore, the proper exchange was that at the time when the account was stated and the balance became immediately payable.

Settle decree on notice.