PHILIP ZWIRN, as Administrator of the Estate of JOE JACOBS, Deceased, Appellant, v. DOMINICK GALENTO, Respondent.

Argued June 16, 1942; decided July 29, 1942.

*Aaron Edward Nowack* and *Abraham D. Strauss* for appellant. A New York resident may, even if unlicensed by the New York State Athletic Commission, negotiate a contract in a foreign State, calling for a boxing exhibition in the foreign jurisdiction, and have access to our courts to recover for services rendered in the foreign jurisdiction. (*Griffith* v. *Wells*, 3 Den. 226; *Ruckman* v. *Bergholz*, 37 N. J. L. 437; *Christopherson & Kiaer, Inc.*, v. *U. S. Navigation Co.*, 121 Misc. Rep. 778; *Fosdick* v. *Investors Syndicate*, 266 N. Y. 130; *Rosasco Creameries, Inc.*, v. *Cohen*, 276 N. Y. 274; *Carmine* v. *Murphy*, 285 N. Y. 413; *Furlong* v. *Johnston*, 209 App. Div. 198; *Bovino* v. *Berberian*, 255 App. Div. 143; *Mertz* v. *Mertz*, 271 N. Y. 466; *Johnson* v. *Dahlgren*, 166 N. Y. 354; *Pratt* v. *Short*, 79 N. Y. 437; *De Witt* v. *Brisbane*, 16 N. Y. 511.) The contractual requirement that the parties appear and receive the approval of the New York State Boxing Athletic Commission is but a condition precedent which has, by the course of conduct of the parties, been waived. (*Bonnot* v. *Grand Lodge*, 229 Mo. App. 519; *Clark* v.

*West*, 193 N. Y. 349; *Wiley* v. *Inhabitants of Athol*, 150 Mass. 426; *Rosenthal Paper Co.* v. *National Folding Box & Paper Co.*, 226 N. Y. 313; *People ex rel. McLaughlin* v. *Board of Police Commissioners*, 174 N. Y. 450; *Matter of Cooper*, 93 N. Y. 507; *Baird* v. *Mayor*, 74 N. Y. 382; *Kiernan* v. *Dutchess County Mut. Ins. Co.*, 150 N. Y. 190; *Knarston* v. *Manhattan Life Ins. Co.*, 140 Cal. 57; *N. Y. Tel. Co.* v. *Jamestown Tel. Corp.*, 282 N. Y. 365.)

*Julius B. Sucher* and *William A. Shea* for respondent. The employment contracts are unenforceable. (*Casarona* **v.** *Pace*, 175 Misc. Rep. 269; *Rosenfeld* v. *Jeffra*, 165 Misc. Rep. 662; *Griffith* v. *Wells*, 3 Den. 226; *Allen* v. *Brice*, 165 Misc. Rep. 181; *Johnston* v. *Dahlgren*, 166 N. Y. 354; *Schnaier* v. *Hotel Co.*, 82 App. Div. 25; *Accetta* v. *Zupa*, 54 App. Div. 33.) The alleged waiver of the contract condition may not be considered. (*Wood Co.* v. *Horgan*, 178 Misc. Rep. 385.)

RIPPEY, J. This action was brought by the administrator of Joe Jacobs to recover for services rendered by Jacobs as manager of the prize-fighter, Tony Galento. The amended complaint was dismissed under rule 106 of the Rules of Civil Practice on the ground that it failed to state facts sufficient to constitute a cause of action. The facts alleged with all inferences reasonably to be derived therefrom must be taken as true (*Dun & Bradstreet, Inc.*, v. *City of New York*, 276 N. Y. 198).

Two causes of action are set up in the complaint, the first based upon a written contract made in the State of New York and dated March 20, 1939, to run for three years, the second upon a *quantum meruit*. Under the written contract, the defendant agreed exclusively to render extraordinary, exceptional and unique services to the manager in the State of New York *and elsewhere* in boxing contests, exhibitions of boxing and in training exercises whenever and wherever required by the manager, and the manager agreed to use his best efforts to secure remunerative boxing contests for defendant and to pay him sixty-six and two-thirds per cent of all sums of money derived by him for any such services rendered by defendant after deducting training expenses and railroad fares incurred by defendant and guaranteed that such percentage should be not less than $5,000 per year.

It is further alleged that pursuant to said contract Jacobs procured in New Jersey a written contract in March, 1940, for a boxing exhibition to be held between defendant and one Max Baer at Roosevelt Field in Jersey City, N. J., on May 28, 1940. Jacobs died on the following April 24th. The complaint sets forth that after the death of Jacobs defendant was granted a postponement of the contest until July 2, 1940, that the defendant, under the agreement negotiated by Jacobs without further change, engaged in the contest on that date, and that, as a result of the services rendered, earned the sum of $33,571, plus additional unknown sums for radio and movie rights. Plaintiff seeks to recover one-third of these earnings.

The written contract between Jacobs and defendant contained the further provisions, (1) that the contract should not be valid until both parties should appear before the New York State Athletic Commission and receive its approval and (2) that it should become null and void if during its term the manager should not be duly licensed by that commission to act as such. In the complaint it is admitted that the parties to the contract did not appear before the New York State Athletic Commission and receive its approval and that Joe Jacobs was not duly licensed by the commission, but it is alleged that the parties entered upon performance of the contract and continued to act under the contract as well as under a previous contract similarly worded notwithstanding, Jacobs procuring engagements for the defendant and defendant taking part in them and receiving the benefits therefrom, and that by those and other alleged acts and a course of conduct the parties waived performance by Jacobs of those conditional provisions precedent, at least, so far as the services for which recovery is sought are concerned. Plaintiff also asserts in the complaint that, by acts and conduct of defendant by which Jacobs was induced to procure the contract and render the services in question, defendant is estopped to rely upon failure to perform those provisions as conditions precedent to recovery. The courts below have held that plaintiff cannot recover since it affirmatively appears that the contract was of no effect in the absence of full performance of the conditions precedent and that performance thereof could not be waived since the statutes governing boxing exhibitions and prize fighting were

enacted to regulate a pastime affecting public morals, health and welfare.

Prize fighting and sparring exhibitions were made a crime under the Penal Law of the State of New York (Penal Law, § 1710). Prosecution was also permissible (§§ 1710, 1713) to the extent that a person, within the State, instigates, aids, encourages or does any act to further such acts without the State or leaves the State for the purpose of eluding the prohibited acts or to commit any act without the State which is prohibited or, being a resident of this State, does any act without the State which would be punishable by the applicable provisions of the Penal Law if done within the State. Jacobs was a resident of the State of New York. In the State of New Jersey, he negotiated a contract between a resident of the State of New Jersey and a resident of the State of California to be performed in the State of New Jersey. However, at the time that contract was negotiated, the negotiation and conduct of boxing matches, prize fights and sparring exhibitions were authorized within the State of New York under the supervision and regulation of the Athletic Commission and section 1710 of the Penal Law had no application to any such matches or exhibitions when so negotiated and conducted (L. 1920, ch. 912, as amd.; McKinney's Unconsolidated Laws, Book 65, §§ 9101–9132). A license for a manager was required only to enable him to participate in a boxing, sparring or wrestling match or exhibition (§ 9107). Jacobs was not required to have a license to negotiate any contract for a match to be conducted in the future either within or without the State. He participated in no such match. He violated no law in negotiating the New Jersey contract. It could not have been the intent of the Legislature to prohibit the conduct of the match in New Jersey. Of course, it had no power to do so. There is no evidence as to the law of New Jersey. In the absence thereof it is presumed that it is the same as the common law of New York (*International Text Book Co.* v. *Connelly*, 206 N. Y. 188, 201) and not the same as its statutory law (*Cutler* v. *Wright*, 22 N. Y. 472; *First Nat. Bank* v. *National Broadway Bank*, 156 N. Y. 459, 472; *Miller* v. *Vanderlip*, 285 N. Y. 116, 123). This is especially so where the statutory law imposes forfeitures and penalties (*Harris* v. *White*, 81 N. Y. 532, 544). The common law of New York placed no bar on the

holding or conduct of such matches (*Fitzsimmons* v. *New York State Athletic Commission*, 146 N. Y. Supp. 117). The applicable statutes are thus in derogation of the common law and must be strictly construed (*People* v. *Wallace & Co.*, 282 N. Y. 417). There was thus nothing illegal with the object of the New Jersey contract or with its negotiation.

The contract between Jacobs and Galento was valid in its origin, is valid on its face and had no illegal object. It was not made in violation of any statute nor with intent to evade or violate any statute. The alleged conditions precedent had no effect on the validity of the negotiation and performance of contracts for boxing exhibitions outside this State. A reasonable interpretation of the agreement leads to the conclusion that the parties intended the conditions with respect to approval and licensing to apply only to exhibitions held within New York State and that exhibitions held in other States were to be governed by the laws of those States. " If there be two reasonable interpretations to an instrument, one making it illegal and the other legal, it is the duty of the courts to adopt the latter " (*Meyer* v. *Price*, 250 N. Y. 370, 378). The law of New Jersey governs the performance of that contract in so far as it relates to exhibitions held within that State and defendant must show by way of defense that plaintiff cannot recover under the law of that State. This is not the case of a contract which calls for a single performance in a single place. The contract contemplated a series of performances in whatever States and places the manager might direct. Where a contract is, either expressly or impliedly, to be performed in any other place than that where made, the general rule is that it is to be presumed that the parties intended that the contract should be governed by the law of the place of performance (Story on Conflict of Laws [8th ed.], § 280; *Andrews* v. *Pond*, 13 Pet. [U.S.] 65; *Dike* v. *Erie Ry. Co.*, 45 N. Y. 113, 116; 2 Beale on Conflict of Laws, § 355.1). If there were otherwise anything in the claim of respondent that plaintiff could not recover for non-performance by Jacobs of the alleged conditions precedent, those conditions of the contract with respect to approval and licensing could be waived by the parties, at least with respect to exhibitions held without the State (*Clark* v. *West*, 193 N. Y. 349). The complaint contains sufficient allegations of waiver.

The contract sued upon was not void as contrary to our public policy. It cannot be said that there has been any declaration of public policy with respect to prize fighting outside of the statutory enactments (*People* v. *Hawkins*, 157 N. Y. 1, 12). Those authorize prize fights and sparring exhibitions. They do not declare contracts with unlicensed managers void, nor were they put into effect to regulate prize fighting outside the State. If plaintiff could recover on this contract in New Jersey he should be allowed to recover here. As Judge CRANE said in *Benton* v. *Safe Deposit Bank* (255 N. Y. 260, 267), where an agreement made and to be performed in Pennsylvania was sued on in this State: " Unless there is something immoral or fundamentally unjust in the arrangement, there is no policy of our State which forbids the enforcement of contracts or agreements which are legal according to the law of the place of performance (citing cases)." There is nothing unjust or immoral in the contract before us, but injustice would result if defendant were allowed to retain the whole benefit of the New Jersey contract secured by plaintiff's intestate and if plaintiff were denied the right to recover for services which plaintiff's intestate rendered in obtaining that contract.

The judgments should be reversed, with costs in all courts and the motion to dismiss the amended complaint denied.

LOUGHRAN, FINCH, LEWIS and DESMOND, JJ., concur; LEHMAN, Ch. J., and CONWAY, J., dissent and vote to affirm.

Judgments reversed, etc.