## GREAT LAKES TRANSIT CORPORATION et al. v. MARCEAU et al.

### No. 191.

Circuit Court of Appeals, Second Circuit.

March 28, 1946.

---

6 Emphasis added.

Before L. HAND, CHASE and FRANK, Circuit Judges.

Ulysses S. Thomas, Buffalo, N. Y., and Russel V. Bleecker and Paul P. Sogg, both of Cleveland, Ohio, for plaintiff-appellant and defendant-appellant.

Edward J. Desmond, John E. Drury, Jr., and Desmond & Drury, all of Buffalo, N. Y., for appellees.

FRANK, Circuit Judge.

1. The Court below found that the parties to the Levisohn-Heirich retainer intended that any action on the claim should be brought in New York. The compensation proceedings could have been instituted nowhere else, and the Transit Corporation's principal office is located there. Levisohn's testimony as to where the parties contemplated the bringing of the action is so equivocal that the finding by the trial judge, who heard the testimony on that point, does not appear to us to have been "clearly erroneous."

If we assume that State law governs, pursuant to Dickinson v. Stiles, 246 U.S. 631, 38 S.Ct. 415, 62 L.Ed. 908, Ann.Cas. 1918E, 501, and that the New York rule of Conflict of Laws therefore applies, pursuant to Klaxon Co. v. Stentor, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, we reach the conclusion that the Illinois statute on which Levisohn bases his claim is irrelevant. In Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 19 N.E.2d 992, 995, the court said that where the parties have not otherwise agreed, "matters bearing upon the * * * interpretation and validity of contracts * * * are determined by the law of the place where the contract is made," while "all matters connected with its performance * * * are regulated by the law of the place where the contract * * * is to be performed." It then went on to say: "The formulation of these general principles has not removed uncertainty and doubt in their application. 'Interpretation' of a contract and its manner of performance are so intertwined that the courts often determine pragmatically the question of whether the law of the place where the contract was made or the law of the place where the contract by its terms is to be performed regulates particular matters which 'bearing upon the interpretation' of a contract are at the same time 'connected with its performance.' Perhaps pragmatic determination may in such cases be indicated by the nature of the problem, and the test whether one rule or the other produces the best practical result may be the safest guide in the search for the intention, actual or assumed, of the parties." Cf. Goodrich, Conflict of Laws (1927) 246.[2]

■ We have found no decisions in New York relating to an agreement such as the

[2] See also Zwirn v. Galento, 288 N.Y. 428, 43 N.E.2d 474, citing Dyke v. Erie Ry. Co., 45 N.Y. 113, at page 116, 6 Am.Rep. 43, where it was said: "The *lex loci contractus* determines the nature, validity, obligation and legal effect of the contract, and gives the rule of construction and interpretation, unless it appears to have been made with reference to the laws and usages of some

one now before us. We think that the New York courts would hold that it is to be interpreted according to the New York internal "law" and not according to Illinois "law." [3] Whether, if we were free to do so, we would employ the same doctrine of conflict of laws is beside the point. Many decisions in that field of law are, in most jurisdictions, based upon fiction, including much talk about the presumed intention of the parties.[4] But whether we like it or not (assuming that "federal law" is not here applicable), we must follow what we believe to be the New York rule.

■ We arrive at the same conclusion if we regard the agreement as an assignment: It was not an assignment of a contract right but of an interest, by way of lien, in a claim arising from a tort,[5] and the assignee was to perform future services in New York. In those circumstances, we believe that the New York "law" governs.[6] Under that "law," Levisohn has no lien on the judgment recovered by Marceau, as Levisohn did not commence or prosecute any action on Marceau's behalf.[7]

Consequently we need not decide whether Garrett v. Moore-McCormack, 317 U.S.

239, 63 S.Ct. 246, 87 L.Ed. 239,[8] over-rules Dickinson v. Stiles, supra, which held that a lawyer's lien attaching to a judgment obtained under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., is a matter to be governed by State law. For, if the Dickinson case were dead, and if "federal law" were applicable, we would reach the same result: Whatever the "federal law" as to lawyers' "charging liens" may be, we have no doubt that it does not confer such a lien upon a lawyer who has neither brought nor won the suit.

■ 2. As there was substantial ground for concern by the plaintiff over its ability to pay the judgment to Marceau in full discharge of its liability, the bringing of this suit under the Interpleader Act, 28 U.S.C.A. § 41(26), was justified. The plaintiff was therefore entitled to an injunction, and also to a small allowance for attorney's fees, $100 on this appeal, plus whatever, if anything, shall, on remand, appear to the Court below to be justified. New York Life Insurance Co. v. Miller, 8 Cir., 139 F.2d 657.

■ Plaintiff chose to retain the use of the $4500.00, and rather than pay the mon-

---

other State or government, *as when it is to be performed in another place, and then in conformity to the presumed intention of the parties, the law of the place of performance furnishes the rule of interpretation.*" (Emphasis added.)

[3] We are fully cognizant of the fact that the Illinois conflicts rule is not here applicable, but it is interesting to note that the Illinois cases consistently apply the Illinois Attorneys' Lien Act in comparable situations. See Smith v. American Bridge Co., 194 Ill.App. 500, injury in Indiana, retainer contract made in Indiana, suit to be brought in Illinois; McGlynn & McGlynn v. Louisville & N. R. Co., 313 Ill.App. 396, 40 N.E.2d 539, injury in Kentucky, contract made in Ohio, suit to be brought in Illinois.

[4] As to the large element of fiction in discussion of the parties' intention, see Beidler & Bookmyer, Inc. v. Universal Ins. Co., 2 Cir., 134 F.2d 828, 830; Kulukundis Shipping Co. v. Amtorg Trading Co., 2 Cir., 126 F.2d 978, 991 and note 43; United States v. Forness, 2 Cir., 125 F.2d 928, note 26; Zell v. American Seating Co., 2 Cir., 138 F.2d 641, 647.

[5] Accordingly, Restatement of Conflicts, § 350 is inapplicable, even assuming it correctly states the New York rule.

[6] It is somewhat difficult to ascertain the exact state of the New York rule

as to the law governing assignments; some cases seem to draw an analogy to the law of property, while still others apply the ordinary contract rules. Miller v. Campbell, 140 N.Y. 457, 460, 35 N.E. 651, validity of a "contract of assignment" is governed by the law of the place of making. See also Jackson v. Tallmadge, 246 N.Y. 133, 158 N.E. 48; and Anglo-California National Bank v. Klein, 162 Misc. 898, 296 N.Y.S. 191, 206. It should be noted that nearly all the New York cases dealing with assignments are those which discuss the validity of the assignment. This is in line with the rule that the validity of any contract is to be governed by the law of the place of making. Cf. McGlynn & McGlynn v. Louisville & N. R. Co., supra, 313 Ill.App. 396 at pages 543 and 544, 40 N.E.2d 539, where the Illinois court speaks of the retainer contract as a partial assignment, but determines the applicable law in terms of the rules which govern all other contracts.

[7] N. Y. Judiciary Law Consol. Laws, c. 30, § 475. "From the commencement of an action * * * the attorney who appears for a party has a lien upon his client's cause of action."

[8] See Ricketts v. Pennsylvania R. Co., 2 Cir., 1946, 153 F.2d 757.

ey into court, it gave a bond. Plaintiff is entitled to receive the cost of the premiums on that bond, but not to an order stopping the running of the interest against it.

Affirmed as to Levisohn; modified in part, affirmed in part, and remanded as to Great Lakes Transit Corp.

L. HAND, Circuit Judge (concurring).

If this appeal must be decided on the assumption that Dickinson v. Stiles, 246 U.S. 631, 38 S.Ct. 415, 62 L.Ed. 908, Ann.Cas. 1918E, 501, still holds, I should be unable to concur. The only question then would be of the effect in Illinois of Marceau's retainer of Levisohn; and the law of that state imposed a lien upon Marceau's claim against the plaintiff from which Marceau could not have freed himself by dismissing Levisohn as his attorney. I can see no more difference than could Holmes, J., between such a lien and the assignment of an interest in the claim, except that the lien is imposed regardless of the intent of the parties. It is the general rule that the courts of another state will give that effect to an assignment that it has in the state where it is made (Restatement of Conflict of Laws § 350); and in New York that is certainly true when the contract is embodied in a document like a cheque, or share of stock, or a bond. Weissman v. Banque de Bruxelles, 254 N.Y. 488; 173 N.E. 835; Hutchinson v. Ross, 262 N.Y. 381, 391, 187 N.E. 65. Surely there is no reason to stop at such contracts, or to adopt a different rule when the transfer is of a claim based upon a tort. Moreover, it would seem that in the case of a lien imposed in invitum, the law of the place of retainer would be even more compelling.

Perhaps, therefore, the question of the creation and extent of the lien is independent of the contract of retainer in general; and, if it is, we need go no further. As to that I am, however, in some doubt, and arguendo I shall assume that the lien is to be regarded as merely an incident or term of the contract; and that, if the contract is to be throughout interpreted by the law of New York, the scope of the lien is to be also so interpreted. Upon that assumption the law of New York as to conflict of laws comes in question. Unless I misapprehend the decisions of that state, they do not differ from the now generally accepted doctrine (Restatement of Conflict of Laws §

332 (f), § 346), that the interpretation of a contract depends upon the lex loci contractus, and not upon the lex loci solutionis. Swift & Co. v. Bankers Trust Co., 280 N. Y. 135, 19 N.E.2d 992; Zwirn v. Galento, 288 N.Y. 428, 43 N.E.2d 474. It is true that the law of New York, like that of many other jurisdictions, was long in confusion, as, for example, appears in Dyke v. Erie Railway Co., 45 N.Y. 113, 116, 6 Am.Rep. 43; but the confusion has grown less, and I doubt whether any jurisdiction, not already committed, would today follow any other rule than that at the lex loci contractus. Beale, Conflict of Laws, § 332.3. Moreover, I find it impossible to support any other rule without violating the assumption, underlying the conflict of laws: i.e., that the courts of other jurisdictions will confer and impose upon the parties, who come before them, rights and liabilities, defined as the law of the place where the relevant legal transaction occurred, defined the rights and liabilities which there arose. As we said in E. Gerli & Co. v. Cunard S. S. Co., 2 Cir., 48 F.2d 115, the parties can make agreements, but they cannot make contracts; only the law of the place where they agree can do that. Another state before whose court the parties come may, indeed, altogether disregard any rights and liabilities which arose in the state of the agreement, and substitute what it likes, for each state is a law unto itself, subject in the United States to the Constitution; but to do so, when the agreement does not offend the moral conventions of the forum, would violate the practise of civilized states. Guinness v. Miller, D. C., 291 F. 769, 770; The James McGee, D.C., 300 F. 93, 96.

On the other hand, people may, if they wish, declare that their promises shall be interpreted by any standard they choose to adopt in their agreement, including whatever interpretation the lex loci solutionis will put upon their words; and the lex loci contractus will ordinarily make such a stipulation as much a part of their contract as any other stipulation. But that does not mean that the lex loci solutionis, ex proprio vigore, ever has anything to do with the interpretation of the contract. It is true that at times courts will look to that law to decide whether the promisor's performance has been in accord with his promise (Restatement of Conflict of Laws § 358); and that is inconsistent with what I have

just said, because it is apparent that that process involves a definition of what the promise means. It is in my judgment because of this inconsistency in theory that the decisions have been so confused, are so confusing; and I believe that the explanation to be that courts have unwittingly applied the doctrine I suggested a moment ago. In other words, I think that, so far as the lex loci solutionis has been used to determine whether the promisor's performance corresponds with his promise, it has been because the courts have implied a term in the contract that, pro tanto, it shall be defined by recourse to that law. Like the importing of any implied term into a contract, there can be no general rule to guide such a decision; and it is to be expected that the results will seem inconsistent. They are, however, no more so than any other interpretations of different contracts.

And so I think that, in the case at bar, we should inquire whether the parties are to be deemed to have impliedly intended, because Levisohn must sue in New York, that his rights under his retainer were to be measured by the law of New York. As has been so often said in like situations, the parties had no actual intent whatever; and what we do when we impute to them an implied intent, is to determine, as well as we can, how they would have provided for the occasion which has arisen, if it had been presented to them. I cannot see the least ground for imputing any intent that the lien should be determined by the law of New York. Certainly, Levisohn, an Illinois attorney, would not have wished that it should be; and, although, had the matter been presented to Marceau, he would probably have wished the largest possible latitude, there is no reason to suppose that he could have prevailed. Besides, presumably he would not have expected that he would become dissatisfied with Levisohn; men ordinarily expect that their contracts will go through as they have arranged.

For these reasons, as I said at the outset, I should vote to reverse, if Dickinson v. Stiles, supra, 246 U.S. 631, 38 S.Ct. 415, 62 L.Ed. 908, Ann.Cas.1918E, 501, were still law, because there the Supreme Court flatly decided that the validity of an attorney's lien upon a claim under the Federal Employers Liability Act, depended upon the law of the state where he was retained.

In spite of the fact that it has never been expressly overruled, I cannot however escape the conclusion that the decision can stand no longer. In Ricketts v. Pennsylvania Railroad, 2 Cir., 153 F.2d 757, we had to consider the validity of the release of a right of action under the Jones Act, 46 U.S. C.A. § 688, and we held that by virtue of Garrett v. Moore-McCormack, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239, the issue was not to be decided by the law of the state where the release had been executed, but by "federal law," to be gathered, as federal courts used to gather "federal law" in cases depending upon diverse citizenship before the advent of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. That reasoning is completely at variance with Dickinson v. Stiles, supra (246 U.S. 631, 38 S.Ct. 415, 62 L.Ed. 908, Ann.Cas.1918E, 501).; indeed, Garrett v. Moore-McCormack, supra, went a good deal further than we need go here. Not only did it hold that the local law did not control the validity of the release, but that even a minor detail of procedure—the burden of proof—was to be decided by "federal law."

There remains the question how we should measure the attorney's lien under "federal law." The alternatives are: (1) to go back to the law as it stood in 1789; or (2) to contrive a rule out of the consensus of the states, as nearly as that can be found, from their customary and statutory law, as the Supreme Court did in ascertaining federal criminal law. Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136. The last is not an impossible task, and it will indeed become more and more necessary, as federal legislation proliferates. Be that as it may, in the case at bar, strictly speaking, we are not faced with the choice: all we need hold is that under neither alternative can Levisohn succeed; and so I believe. Under the law of the states as it stood in 1789, it was at best a vexed question whether an attorney had any charging lien at all; certainly, he had none in the circumstances here. It would not be an easy matter to collate the laws of all the states as they exist today, and to strike a just average, and it would be unsafe to say that none of them go so far as the Illinois statute; but it would not be unsafe to say that, if any do go so far, they are extremely rare. Ordinarily the lien attaches only at the time of

the judgment, although, at least in New York, the time is the commencement of an action (Judiciary Law, § ·475). At any rate, so far as I can learn, there are none which fix an irrevocable lien from the moment of the retainer.