175 F.3d 274
 Damian LUBRANO, Plaintiff,
v.
WATERMAN STEAMSHIP COMPANY, Defendant-Appellant,
Weeks Marine, Inc., sued here as Weeks Off-shore Crane
Company, Defendant-Appellee,
Bay Crane Co., Inc., John Doe (1-10) and XYZ Inc. (1-10), Defendants.
 Docket No. 98-7849.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 26, 1999.
Decided April 30, 1999.
 
 Michael E. Unger, of counsel, De Orchis, Walker & Corsa, LLP (LeRoy S. Corsa, of counsel, on the brief), New York, N.Y., for Defendant-Appellant Waterman Steamship Company.
 Michael N. Cotignola, New York, N.Y., for Defendant-Appellee Weeks Marine, Inc.
 Before: NEWMAN, WALKER, and CALABRESI, Circuit Judges.
 CALABRESI, Circuit Judge:
 
 
 1
 This case presents the issue of whether a shipowner who successfully defends against a suit by an injured longshoreman may recover its litigation costs from a stevedore[1] who caused the longshoreman's injuries and who is not the employer of the longshoreman (hereinafter the "nonemploying stevedore"). The district court held that an obligation to indemnify is not an implied term of the contract between a shipowner and a stevedore. We agree, and affirm the district court's decision.BACKGROUND
 
 
 2
 On February 24, 1994, plaintiff Damian Lubrano, who worked as a longshoreman for American Stevedoring, was loading a barge owned by defendant-appellant Waterman Steamship Company ("Waterman"). Waterman had rented a crane from defendant-appellee Weeks Marine, Inc. ("Weeks")--the stevedore whose liability is at issue in this case--for the purpose of loading its barge. A piece of ice fell from the Weeks crane and struck Lubrano on the left wrist and forearm.
 
 
 3
 The Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950 (1994), prevented Lubrano from recovering anything more than workers' compensation benefits from American Stevedoring. See id. § 905(a). The LHWCA allows recovery, however, against negligent shipowners and any other party (except the employer) responsible for a covered employee's injury. See id. §§ 905, 933. Accordingly, Lubrano brought suit against Waterman and Weeks, alleging that their negligence had caused his injuries. Waterman asserted a cross-claim for indemnification against Weeks.
 
 
 4
 At the conclusion of trial, a jury found that Weeks, but not Waterman, had negligently caused Lubrano's injuries.[2] Waterman sought to recover its litigation expenses from Weeks, and the district court denied indemnification. See Lubrano v. Weeks Marine, Inc., No. 95-CV-3642, 1998 WL 765135 (E.D.N.Y. May 19, 1998).
 
 DISCUSSION
 
 5
 Can a shipowner who successfully defends against a suit by an injured longshoreman recover its litigation costs from a nonemploying stevedore who caused the longshoreman's injuries?[3] On the basis of Second Circuit precedents, the answer to this question is clearly "no." The path to this conclusion is tortuous, however, and merits explication.
 
 A.
 
 6
 In 1946, the Supreme Court held that longshoremen who were injured by a dangerous or defective condition aboard a vessel on which they were working could recover from the vessel's owner on the theory that the owner had breached its implied warranty of the seaworthiness of the ship. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99-102, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Later, the Court established an implied warranty of workmanlike performance, which held that a stevedore who contracted with a shipowner implicitly promised that it would perform its services competently and safely. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 130-31, 76 S.Ct. 232, 100 L.Ed. 133 (1956). At the same time, the Court read the contract between the shipowner and the stevedore to give the shipowner an implied right of indemnification against the stevedore for damages sustained as a result of any breach of this warranty. See id. at 130, 76 S.Ct. 232. To decide the case before us, we must consider the continued viability of this so-called "Ryan indemnity" in light of our precedents since Ryan.
 
 
 7
 In Fairmont Shipping Corp. v. Chevron International Oil Co., 511 F.2d 1252 (2d Cir.1975), we stated that Ryan indemnity applied only in cases in which a contractor rendered its services to a shipowner in a way that exposed the shipowner to strict liability (for example, under the doctrine of seaworthiness) and did not apply to situations (like the one currently before us) in which the shipowner would be liable, if at all, only in negligence. See id. at 1257-58 & n. 8. But this statement, although expressed unequivocally and after carefully reasoned analysis, was made in dicta.[4] As such, even though the language of Fairmont Shipping directly covers the case now before us, Fairmont Shipping does not bind us.
 
 
 8
 Two years later, however, we ruled that a shipowner had no right of indemnification against the owner of a fuel barge that allegedly caused a fire while fueling the owner's vessel. See Navieros Oceanikos, S.A. v. S.T. Mobil Trader, 554 F.2d 43, 44-47 (2d Cir.1977). Citing Fairmont Shipping, we held that Ryan indemnity was not available because the shipowner seeking indemnification had not been exposed to liability without fault. See id. at 46-47. Navieros Oceanikos thus made the dictum in Fairmont Shipping into the binding precedent of this Circuit.
 
 
 9
 In the instant case, Lubrano sued Waterman only in negligence.[5] Accordingly, if the rule we stated in Fairmont Shipping and Navieros Oceanikos applies to the facts before us, we are bound to affirm the district court's decision disallowing Waterman's indemnification claim. If, instead, Ryan indemnity still obtains, then Waterman is entitled to recover its litigation costs from Weeks. This is because in Massa v. C.A. Venezuelan Navigacion, 332 F.2d 779 (2d Cir.1964), we held that Ryan indemnification applies to compensate shipowners for the costs of successfully defending against suits brought by longshoremen injured by a stevedore's breach of its contractual duties to the shipowner. See id. at 782.
 
 
 10
 Whether the Fairmont Shipping-Navieros Oceanikos rule applies depends on whether Navieros Oceanikos can and should be distinguished from the situation before us. The factual contexts of the two cases do differ. Navieros Oceanikos involved a claim for property damage by a shipowner against a bunkering contractor, and the instant case involves personal injury. But nothing in our reasoning in Fairmont Shipping or Navieros Oceanikos indicates that this distinction mattered at all to the courts in these cases.[6] Nor do we see a basis for making such a differentiation in deciding whether to imply an indemnification agreement into a contract. We therefore affirm the district court's ruling that Weeks had no obligation to indemnify Waterman.
 
 B.
 
 11
 The Fairmont Shipping-Navieros Oceanikos rule means that Ryan indemnity is virtually dead, at least in this Circuit.[7] How this came to be, and in particular how it happened that a Supreme Court doctrine that was neither abrogated nor expressly overruled came no longer to apply, is a long and tortured tale. Nevertheless, we believe that we owe it to the litigants to explain how this point was reached. The answer, in short, is that by the time we decided Fairmont Shipping and Navieros Oceanikos in the mid-1970s, the legal relationship among longshoremen, shipowners, and stevedores had come to differ fundamentally from what it had been when the Supreme Court established and developed the concept of Ryan indemnity in the 1950s and 1960s. These changes in the legal relations made it unlikely that the shipowner and stevedore would have intended a duty to indemnify. Accordingly, such indemnity was no longer appropriately implied into the shipowner-nonemploying stevedore contract. Cf. Great Lakes Transit Corp. v. Marceau, 154 F.2d 623, 628 (2d Cir.1946) (L. Hand, J., concurring) (noting that the task of courts in construing implied terms of a contract is to determine what the parties would have intended if they had explicitly considered the issue).
 
 1.
 
 12
 The LHWCA, like most other workers' compensation systems in the United States, has always immunized employers covered by the Act from suit by their injured employees. In return for this protection, the employers incurred an obligation to compensate their employees for occupational injuries according to a statutorily prescribed scheme. See 33 U.S.C. § 904(a) (establishing the employer's liability for compensation); id. § 905(a) (immunizing employers against liability to injured employees other than under the statutory compensation scheme); see generally Note, Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes, 96 Harv. L.Rev. 1641, 1643 (1983) ("These limited [statutory] benefits are the exclusive remedy for injured workers against their employers. Employer immunity from tort actions for work-related injures has frequently been deemed the quid pro quo that turn-of-the-century employees granted in exchange for the statutory guarantee of swift and certain compensation." (footnotes omitted)).
 
 
 13
 As originally enacted, however, the LHWCA did not preclude longshoremen from bringing a workplace injury suit against persons or entities other than the longshoremen's employers. Thus, in 1946, the Supreme Court held that longshoremen could recover from a shipowner under the warranty of seaworthiness[8] if they were injured by a dangerous or defective condition aboard the owner's vessel. See Seas Shipping Co., 328 U.S. at 89-100, 66 S.Ct. 872. The Court also ruled more generally that the LHWCA had not affected any of a longshoreman's common law rights against an owner of a vessel on which the longshoreman was injured (unless the owner also happened to be his employer). See id. at 101-02, 66 S.Ct. 872. In the wake of Seas Shipping Co., therefore, shipowners could be liable to injured longshoremen not only for negligence but also strictly for any breaches of the implied warranty of seaworthiness.
 
 
 14
 Although the LHWCA's exclusive remedy rule protected stevedores from liability (in excess of the statutory compensation) to their injured employees, it offered no immunity to shipowners against suits brought by the stevedore's longshoremen. As a result, when an employing stevedore caused a shipowner to breach its warranty of seaworthiness--for example, by improperly stowing cargo--the shipowner could be held wholly liable, even though without fault, while the perhaps-negligent stevedore's liability would seemingly be limited to the statutory compensation.
 
 
 15
 Not surprisingly, such fault-free shipowners who found themselves liable to injured longshoremen sought recovery (through indemnification or contribution) from the stevedores who had caused the injuries. In 1952, however, the Supreme Court ruled that a shipowner held liable to an injured longshoreman had no right of contribution from the longshoreman's employing stevedore. See Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 287, 72 S.Ct. 277, 96 L.Ed. 318 (1952). Having rejected a shipowner's claim to a right of contribution against negligent stevedores, the Supreme Court, four years later in Ryan, endorsed a right of indemnification in a very similar situation.
 
 
 16
 As noted above, Ryan read a warranty of workmanlike performance into the shipowner-stevedore contract. It then implied a right of indemnification by the shipowner against the stevedore for damages caused by the stevedore's breach of that warranty. See 350 U.S. at 130-31, 76 S.Ct. 232. Because the warranty gave rise to liability in contract, the Court reasoned that an indemnity action by a shipowner against a stevedore was neither barred by the LHWCA, see id. at 128-32, 76 S.Ct. 232, nor by Halcyon Lines ' prohibition against contribution actions in tort.
 
 
 17
 In 1973, the Court resurrected contribution claims by shipowners against nonemploying stevedores from their apparent death in Halcyon Lines. In Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), the Court allowed a shipowner sued by an injured longshoreman to seek contribution from the nonemploying stevedore whose negligence had caused the longshoreman's injuries.[9] In so doing, the Court construed Halcyon Lines narrowly, noting that "[d]espite the occasional breadth of its dictum," Halcyon Lines ' prohibition against contribution claims should be confined to claims against employing stevedores. Id. at 111, 113, 94 S.Ct. 2174. The concern that animated Halcyon Lines, according to the Court, was the desire to avoid creating a circuitous route to employer liability that would have undermined "Congress' determination that as between an employer and its injured employee, the right to compensation under the Act should be the employee's exclusive remedy." Id. at 112-13, 94 S.Ct. 2174. "[W]hatever weight these factors were properly accorded in the factual circumstances presented in Halcyon," the Court continued, "they have no application [in a case involving a claim against a nonemploying stevedore]." Id. at 113, 94 S.Ct. 2174.
 
 2.
 
 18
 Cooper Stevedoring 's view of Halcyon was consistent with Congress' 1972 amendments to the LHWCA. Those amendments--which did not apply to Cooper Stevedoring--had expressly relieved employing stevedores from the indirect liability for their employees' injuries that Ryan indemnity had imposed. They did not speak directly, however, to Ryan indemnity as against nonemploying stevedores.
 
 
 19
 The amendments provided in relevant part:In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.
 
 
 20
 33 U.S.C. § 905(b).
 
 
 21
 The language of § 905(b) refers only to the "vessel" and the "employer." Cf. Francis J. Gorman, Indemnity and Contribution Under Maritime Law, 55 Tul. L.Rev. 1165, 1187-88 (1981) ("[Section 905(b) ] applies, however, only to covered employers and, therefore, does not grant an immunity from indemnity or contribution to anyone other than those specified in the amendment.... Moreover, other than section 905(b), there is no statutory restraint on indemnity or contribution claims in maritime law."). And the Supreme Court has described the amendments in relatively narrow terms:
 
 
 22
 The intent and effect of this amendment were to overrule this Court's decisions in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), insofar as they made an employer circuitously liable for injuries to its employee, by allowing the employee to maintain an action for unseaworthiness against the vessel and allowing the vessel to maintain an action for indemnity against the employer.
 
 
 23
 Cooper Stevedoring, 417 U.S. at 113 n. 6, 94 S.Ct. 2174. Accordingly, it would be incorrect to say that the 1972 amendments to the LHWCA directly abrogated Ryan indemnity against nonemploying stevedores.[10]
 
 
 24
 But this did not mean that the amendments had no bearing on the question of whether Ryan indemnity survived the 1972 changes. The amendments affected the interrelationship among longshoremen, shipowners, and stevedores in another fundamental way: they expressly discarded the warranty of seaworthiness as a basis for holding shipowners liable to longshoremen. And, although the legislative history of the amendments makes clear that Congress considered its addition of § 905(b) to eliminate Ryan indemnification only against a covered employer, that same history also expresses a more general belief that, by eliminating strict liability under the seaworthiness doctrine, the amendments removed the need for Ryan indemnification altogether.[11] Cf. Smith & Kelly Co. v. S/S Concordia TADJ, 718 F.2d 1022, 1027 n. 4 (11th Cir.1983) ("[W]e view the 1972 Amendments as casting doubt on the continued vitality of the Ryan indemnity principle.").
 
 
 25
 It is not surprising, therefore, that our own cases, after 1972, deemed the existence of strict liability essential to Ryan indemnity. See, e.g., Fairmont Shipping, 511 F.2d at 1257-58 (stating in dicta that Ryan indemnity is available only if a contractor exposes the shipowner to strict liability); Navieros Oceanikos, 554 F.2d at 46 (relying on the Fairmont Shipping dictum). Indeed, even before the 1972 amendments, we had posited the central role of strict liability to such indemnity. See Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 276 (2d Cir.1968) ("[A]ny equitable considerations underlying the decision of courts to require indemnity by applying the implied warranty of workmanlike service are ultimately derived from a shipowner's liabilities under the seaworthiness guarantee...."); DeGioia v. United States Lines Co., 304 F.2d 421, 425 (2d Cir.1962) ("The primary source of the shipowner's right to indemnity, as a practical matter, is his nondelegable duty to provide a seaworthy ship....").
 
 3.
 
 26
 The problem with reading Ryan indemnity as contingent upon the shipowner being subject to strict liability, however, is that such a view does not entirely comport either with the Supreme Court's rationale for creating Ryan indemnity or with later Supreme Court cases that developed the Ryan doctrine, albeit before the 1972 amendments. On their face, Ryan and its early progeny do not reflect the premised essential link between the shipowner's warranty of seaworthiness to the longshoreman and its right of indemnification against the stevedore.
 
 
 27
 In fact, Ryan itself did not necessarily involve strict liability. Although Ryan is widely described as involving a shipowner's liability for breach of its warranty of seaworthiness, the injured longshoreman's suit against the shipowner had claimed liability based on both negligence and unseaworthiness, and the outcome of the trial did not reveal whether liability was founded on one or the other, or both. See Ryan, 350 U.S. at 127, 76 S.Ct. 232; see also Palazzolo v. Pan Atlantic S.S. Corp., 111 F.Supp. 505, 506 (E.D.N.Y.1953) (noting that the jury had been charged on both theories and returned a general verdict), aff'd in part and rev'd in part, 211 F.2d 277 (2d Cir.1954), aff'd sub nom. Ryan, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.
 
 
 28
 And Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), decided two years after Ryan, made even more clear that at that time the Court did not consider the right to Ryan indemnity to depend on the basis of the shipowner's liability to the longshoreman. In Weyerhaeuser, as in Ryan, the longshoreman initially claimed both negligence and breach of the warranty of seaworthiness. See id. at 564, 78 S.Ct. 438. Unlike Ryan, however, the jury in Weyerhaeuser specifically found that the shipowner, though negligent, had not breached its warranty of seaworthiness. See id. at 564, 78 S.Ct. 438. Yet the Court saw no problem with applying Ryan indemnity, and it never mentioned the possibility that the fact that the shipowner's liability was based on fault rather than strict liability might affect its right to indemnification.
 
 
 29
 It is not easy, therefore, to reconcile our statements declaring an absolute link between Ryan indemnity and strict liability with the language of Ryan and its immediate progeny. And some of our own cases, applying pre-1972 law, took the position that, under the Ryan doctrine, the theory underlying the longshoreman's claim against the shipowner did not by itself determine whether or not Ryan indemnity was available.
 
 
 30
 For example, in Henry v. A/S Ocean, 512 F.2d 401 (2d Cir.1975), we affirmed the district court's grant of indemnification by the shipowner against the employing stevedore in a situation in which (1) the shipowner acted negligently; (2) the shipowner did not breach its duty of seaworthiness; and (3) the stevedore had breached its duty of workmanlike performance to the shipowner.[12] See id. at 403, 406-07. Henry founded Ryan indemnity on the fact that the stevedore's conduct had violated its warranty of workmanlike performance to the shipowner and in doing so had caused the shipowner to violate its duty to the longshoreman, thereby becoming liable to the longshoreman for his injuries. According to this contractually based view, whether the duty that the shipowner violated was the duty to provide a seaworthy ship or its nondelegable general duty of care to those working on its vessel was not important. In either case it was the stevedore's breach of its contract with the shipowner that gave rise to the liability.
 
 4.
 
 31
 But the legal context of the relationship between the shipowner and the nonemploying stevedore has changed dramatically since Ryan, Weyerhaeuser, and Henry were decided. And these changes seemingly have led courts to read shipowner-nonemploying stevedore contracts differently--particularly with respect to the implied terms of such contracts. As Congress noted in the legislative history to the 1972 LHWCA amendments, abrogating the right of the longshoreman to sue the shipowner under the seaworthiness doctrine removed much of the impetus for Ryan indemnity. More of the rationale of Ryan was undercut when the Supreme Court held that the 1972 amendments also eliminated a shipowner's vicarious liability for a stevedore's negligence that violated a previously nondelegable duty. "[T]he shipowner," the Court held, "has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." Scindia Steam Navigation, 451 U.S. at 172, 101 S.Ct. 1614. Finally, since 1974, when shipowners are sued in negligence and held liable, they have been able to seek contribution against nonemploying contractors. See Cooper Stevedoring, 417 U.S. at 113, 94 S.Ct. 2174.[13]
 
 
 32
 Each of these developments in the law made it less likely that shipowners and nonemploying stevedores would have chosen--had they considered the matter--to contract for indemnification. Accordingly, these changes made it less appropriate for courts to imply terms of indemnification. Cf. Great Lakes Transit Corp., 154 F.2d at 628 (L. Hand, J., concurring) ("As has been so often said in like situations, the parties had no actual intent whatever; and what we do when we impute to them an implied intent, is to determine, as well as we can, how they would have provided for the occasion which has arisen, if it had been presented to them.").[14]
 
 CONCLUSION
 
 33
 Our review reveals two different explanations of Ryan indemnity: one based on equitable considerations and one based on contract principles. The theory of Ryan indemnity that looked to equitable concerns, as expressed in Fairmont Shipping and Navieros Oceanikos, posited that shipowners exposed to strict liability--or to vicarious liability under a nondelegable duty theory--for damages caused by contractors should be able to get reimbursement from the contractors. This made particular sense at the time Ryan was decided, because shipowners who were strictly liable for unsafe conditions on their ships had no right of contribution against contractors that caused unsafe conditions. According to this view, Ryan indemnity was needed to remedy the unfairness of this situation. The theory of Ryan indemnity that relied on contract principles, as set forth in Henry, asserted that courts should read loss-allocation provisions--specifically, indemnification--into contracts between shipowners and stevedores.
 
 
 34
 But our review also suggests that while these two explanations of Ryan indemnity relied on different grounds, they did not really conflict. In fact, the equity-based view and the contract-based view are best read in tandem. The key to reconciling the two perspectives is recognizing that Ryan indemnification was a judicially created doctrine. Courts implied a term of indemnification into the shipowner-stevedore contract as a reasonable approximation of the parties' intent within a particular context--a context (1) in which a contractor's defective performance could expose the shipowner to liability for injuries caused by that defective performance regardless of whether the shipowner was at fault for the injury, and (2) in which noncontractual loss allocation mechanisms--like contribution--were unavailable.
 
 
 35
 The end of shipowner strict liability and the availability of contribution as an alternative to indemnification made reading a covenant to indemnify into the shipowner-stevedore contract no longer seem appropriate, either to the House Committee that proposed the 1972 amendments to the LHWCA, or to this court in Fairmont Shipping and Navieros Oceanikos. Accordingly, in the absence of an express indemnification clause to the contrary, the contract between a shipowner and a nonemploying stevedore does not obligate the stevedore to indemnify the shipowner for the shipowner's liability to an injured longshoreman. It follows that Weeks does not have to indemnify Waterman for its litigation costs expended in successfully defending against Lubrano's suit. The decision of the district court is therefore AFFIRMED.
 
 
 
 [1]
 A stevedore is a marine contractor who loads and unloads ships in port
 
 
 [2]
 Lubrano's employer, American Stevedoring, also was found negligent but, as noted above, was protected by the LHWCA from liability and therefore had not been named as a defendant in the suit
 
 
 [3]
 Congress has expressly precluded such recovery by a shipowner against a stevedore who is the employer of the longshoreman (hereinafter "the employing stevedore"). See 33 U.S.C. § 905(b) (1994)
 
 
 [4]
 Specifically, we made the observation only by way of distinguishing the contractor's warranty of workmanlike performance, which was involved in Fairmont Shipping, from a shipowner's right of indemnity against the contractor, which was not. See id. at 1259
 
 
 [5]
 Congress abrogated the longshoreman's right to recover from a shipowner for breach of the warranty of seaworthiness in 1972, thereby eliminating liability without fault from the shipowner-longshoreman relationship. See 33 U.S.C. § 905(b) (1994); see also Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 172, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) (reading § 905(b) to bar suits based on a shipowner's vicarious liability arising out of its non-delegable duty)
 
 
 [6]
 Indeed, that the Fairmont Shipping and Navieros Oceanikos courts felt bound to discuss Ryan--a personal injury case--even though their cases involved property damage suggests the absence of a relevant distinction between the two contexts
 
 
 [7]
 Cf. 1 Thomas J. Schoenbaum, Admiralty and Maritime Law, § 5-8, at 194-99 (2d ed.1994) (reviewing the relevant case law and concluding that Ryan indemnity survives in cases involving "privately employed longshoremen and harbor workers injured outside the territorial coverage of the LHWCA" and, in some circuits, even in cases involving personal injuries to seamen who are injured due to the conduct of a stevedore or other contractor); cf. also infra note 10 (noting the unresolved issue of whether a non-shipowner may seek Ryan indemnity from an employing stevedore)
 
 
 [8]
 The warranty of seaworthiness originally applied to seamen who worked directly for the shipowner. See The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760 (1903). In Seas Shipping Co., the Supreme Court held that the warranty did not arise solely out of the employment contract between a seaman and shipowner, but rather extended to all persons working on a shipowner's vessel "with his consent or by his arrangement." 328 U.S. at 95, 66 S.Ct. 872
 
 
 [9]
 The Court expressly declined "to determine whether contribution in cases such as this should be based on an equal division of damages or should be relatively apportioned in accordance with the degree of fault of the parties." Id. at 108 n. 3, 66 S.Ct. 872; cf. Doca v. Marina Mercante Nicaraguense, S.A., 634 F.2d 30, 33 (2d Cir.1980) (affirming the district court's allocation of liability between a shipowner and nonemploying stevedore based on the relative fault of the parties). The Supreme Court similarly declined to say whether the 1972 amendments to the LHWCA would have affected the outcome of the case if they had applied. See Cooper Stevedoring, 417 U.S. at 107 n. 1, 94 S.Ct. 2174. The amendments did not apply because the longshoreman filed his suit against the employer before 1972. See id
 
 
 [10]
 Courts are in conflict as to whether Ryan indemnity by a non-shipowner against an employing stevedore survived the 1972 amendments. Courts that have denied indemnity in such situations have cited § 905(b)'s intent to immunize employing stevedores from third-party litigation. See, e.g., Oman v. Johns-Manville Corp., 482 F.Supp. 1060, 1072 (E.D.Va.1980); Spadola v. Viking Yacht Co., 441 F.Supp. 798, 802-03 (S.D.N.Y.1977). Courts that have upheld indemnity have looked to the intent of the parties, as evidenced by their particular contractual arrangement. See, e.g., Olsen v. Shell Oil Co., 595 F.2d 1099, 1104 (5th Cir.1979). When we were confronted with this issue, we noted that "[g]iven the clear statutory language and the absence of legislative history at variance with it, we would hesitate to hold that § 905(b) by its own force cuts off the availability of Ryan indemnity to a non-vessel in all cases where the concurring negligence of a stevedoring company has caused injuries to the latter's employees." Zapico v. Bucyrus-Erie Co., 579 F.2d 714, 721-22 (2d Cir.1978). We resolved the case without deciding the issue, however, because we found that, in the particular case, no Ryan-like intent to indemnify could be implied between the parties. See id. at 722
 
 
 [11]
 The House Committee report said this about the relevant portions of the amendments:
 The Committee also believes that the doctrine of the Ryan case, which permits the vessel to recover the damages for which it is liable to an injured worker where it can show that the stevedore breaches an express or implied warranty of workmanlike performance[,] is no longer appropriate if the vessel's liability is no longer to be absolute, as it essentially is under the seaworthiness doctrine. Since the vessel's liability is to be based on its own negligence, and the vessel will no longer be liable under the seaworthiness doctrine for injuries which are really the fault of the stevedore, there is no longer any necessity for permitting the vessel to recover the damages for which it is liable to the injured worker from the stevedore or other employer of the worker.
 Furthermore, unless such hold-harmless, indemnity or contribution agreements are prohibited as a matter of public policy, vessels by their superior economic strength could circumvent and nullify the provision of Section 5 of the Act by requiring indemnification from a covered employer for employee injuries.
 Accordingly, the bill expressly prohibits such recovery, whether based on an implied or express warranty. It is the Committee's intention to prohibit such recovery under any theory including, without limitation, theories based on contract or tort.
 H.R.Rep. No. 92-1441 (1972), reprinted in 1972 U.S.C.C.A.N. 4698, 4704.
 
 
 [12]
 Although Henry was decided in 1975, the 1972 amendments did not apply--the longshoreman's injury occurred in 1966--and the shipowner's indemnification claim against the employing stevedore therefore was not precluded. See 512 F.2d at 404
 In rejecting the stevedore's argument that indemnification should not be allowed because the shipowner had been negligent, we stated:
 Where the shipowner's liability for violation of his non-delegable duties, whether cognizable under a theory of unseaworthiness or of negligence, is attributable to the stevedore's action or inaction in breach of his contractual obligation, the recovery of indemnity should not turn on the particular theory selected by the plaintiff as the basis of his suit against the shipowner.
 Id. at 406.
 Waterman relies heavily on this language to support its contention that the 1972 amendments' abrogation of the longshoreman's right to recover under the doctrine of seaworthiness did not terminate Ryan indemnity against nonemploying stevedores. But Henry 's apparently broad statement is actually narrower than it appears. The statement focuses on the shipowner's non-delegable duty liability. Such vicarious liability makes shipowners pay, whether or not they are at fault. Cf. Wilson v. City of New York, 89 F.3d 32, 36 (2d Cir.1996); Wanser v. Long Island R.R. Co., 238 F.2d 467, 470 (2d Cir.1956). And it does so regardless of whether the independent contractor to whom the shipowner is not permitted to delegate its responsibility acted negligently or acted non-negligently but in a way that triggered the shipowner's strict liability. For this reason, the 1972 amendments, which had explicitly eliminated only the shipowner's non-fault liability for unseaworthiness, were in time read also to bar shipowner liability based on a non-delegable duty. See Scindia Steam Navigation, 451 U.S. at 172, 101 S.Ct. 1614; Napoli v. Transpacific Carriers Corp., 536 F.2d 505, 507 (2d Cir.1976).
 
 
 [13]
 Both Fairmont Shipping and Navieros Oceanikos reflect the link between the availability of contribution and the implication of a duty to indemnify
 Thus, in Fairmont Shipping, we stated, "Ryan was the culmination of a series of cases involving the interlocking relationships among shipowners, stevedoring companies and longshoremen, and must be read with that backdrop in mind." 511 F.2d at 1255. One of the key elements of this backdrop, we noted, was Halcyon Lines' holding that shipowners could not pursue contribution against stevedores. See id.
 And in Navieros Oceanikos, the district court had allocated liability for the damage to the vessel between the shipowner and contractor in proportion to their relative fault--an outcome analogous to contribution under a comparative negligence paradigm. See 554 F.2d at 44. We refused to imply a contractual term of indemnification that would have superseded this loss allocation. See id. at 46. It is reasonable to infer from our decision that our unwillingness to imply a duty to indemnify stemmed at least in part from the availability of an alternative (and, in many ways, more sophisticated) loss allocation mechanism.
 
 
 [14]
 The fact that Judge Mansfield, the author of Henry, also sat on the panels that decided Fairmont Shipping and Navieros Oceanikos, and concurred in the relevant portions of those opinions, corroborates the conclusion that Henry, Fairmont Shipping, and Navieros Oceanikos are fully compatible. See Fairmont Shipping, 511 F.2d at 1261 (Mansfield, J., dissenting on other grounds) ("[The majority's] thorough and scholarly analysis of the historical development of the Ryan-type warranty demonstrates that we are not here confronted with such an indemnity...."); Navieros Oceanikos, 554 F.2d at 48 (Mansfield, J., concurring in part and dissenting in part)