■ TELEMARK CONSTRUCTION, INC., Respondent-Appellant, v A. FREDERICK GREENBERG et al., Defendants, and HAMPTONS I LIMITED PARTNERSHIP et al., Appellants-Respondents. [613 NYS2d 900] —Judgment, Supreme Court, New York County (Robert F. Doran, J.), entered March 5, 1993, which, after inquest, awarded plaintiff $606,964.45 plus interest at the rate of 1.2% per month from August 11, 1992 and costs, for a sum total of $657,173.20, unanimously reversed, on the law and the facts, without costs or disbursements, and the matter remanded for a recalculation of damages in accordance herewith. Appeals from the orders of the same court and Justice, entered March 3, 1993 and the same court (Edward J. Greenfield, J.), entered May 11, 1993, dismissed as subsumed in the appeal from the judgment.

Plaintiff, a contractor, sues to recover monies allegedly due under a construction contract calling for the construction of 48 luxury homes in Southampton and East Hampton. Construction commenced in July of 1988. Initially, plaintiff's invoices were paid in full. Notwithstanding the failure of defendants, the owners, in or about March 1989 to make timely payments, as required under the contract, plaintiff continued to perform after being advised that payment was forthcoming. Plaintiff ceased any further construction and

terminated the contract in late September 1989 as a result of defendants' failure to make the required payments. Plaintiff was awarded summary judgment on liability and this Court affirmed (181 AD2d 561). The matter was set down for inquest at which defendants did not challenge the extent or quality of the work. Instead, they contested the markup, under the terms of the contract, of certain items, including labor. Specifically, they challenge the markup for employees on plaintiff's payroll. The parties agree that the labor charge for subcontractors was to be marked up at the rate of 10% plus an additional 10%. With respect to workers on plaintiff's payroll, the contract provided that the owners were "to be charged at customary rates." An issue arose at the hearing as to what was the customary rate. Mr. Dalene, who negotiated the contract for plaintiff, testified that a 100% markup is standard for builders on Long Island and represents the customary rate. Mr. Greenberg, the general partner of both defendant limited partnerships, testified that the use of the words "customary rates" was meant to indicate that this expense would be charged like all other labor and material costs under the contract, i.e., 10% over actual cost plus an additional 10%. Defendants' expert, Mr. Licht, testified that the customary charges for the contractor's own laborers would be the same 10% above cost plus 10%. The IAS Court specifically credited Licht's testimony but inexplicably found that it was Licht's opinion that "customary rates are actual labor costs plus 100%." Mr. Licht specifically testified that the "customary rate" as provided in section 7.1.1 of the contract would not permit a 100% markup. Accordingly, this item of recovery should be recalculated on the basis of a rate of 10% above cost plus an additional 10%.

Defendants also argue that plaintiff is not entitled to compound interest at the rate of 1½% monthly as reflected in their monthly invoices. As defendants aptly note, the contract does not specifically provide for compound interest. Article 14 provides that interest on payments due and unpaid "shall be at the rate charged to the [c]ontractor by the lending institution [c]ontractor is borrowing from." Defendants argue that since there was no evidence offered that plaintiff was borrowing to enable it to perform under this contract, its request for compound interest at the rate of 1½% per month should have been rejected. Defendants also argue that article 14 should not be construed to allow compound interest since the contract was executed almost one year before the enactment of General Obligations Law § 5-527, effective June 1989, which per-

mitted the charging of compound interest. We reject defendants' arguments. Contrary to their claim, the record shows that plaintiff had to borrow from a bank to meet its expenses, some of which were attributable to defendants' projects, and was charged compound interest at the rate awarded herein. Moreover, it is not disputed that when defendants stopped paying, plaintiff invoiced defendants, without objection, at 1.5% monthly interest on the outstanding balance. Indeed, even at trial the dispute centered on whether plaintiff could charge interest on the unpaid balance, rather than the compounding thereof. Thus, the issue is unpreserved and was, in any event, properly rejected in the May 11, 1993 order denying defendants' post-trial CPLR 4404 motion. Finally on this point, the rule is that, absent evidence that the parties intended to violate the law, a contract that may be performed lawfully as well as unlawfully should be construed in favor of its legality. *(Galuth Realty Corp. v Greenfield,* 103 AD2d 819.) Article 14 of the contract represents the parties' tacit understanding of the cost of doing business and the eventuality that the owners would be late in making payment. The monthly interest rate should be considered as additional compensation rather than an award of compound interest. In any event, the interest must be recalculated on the new award after the proper application of the "customary rates" to plaintiff's claims with respect to its own workers. The monies paid as a down payment should be credited to defendants before interest is computed and applied to the outstanding balance due on September 29, 1989, the date plaintiff terminated the contract, since, as of that date, plaintiff had full use of said monies.

Plaintiff's cross appeal seeking lost profits is without merit. The IAS Court found that plaintiff terminated the contract when defendants ceased to make payments, as billed, thereby triggering the termination provisions of article 14, which, pursuant to section 14.1.2, permitted recovery of payment for work and for proven loss with respect to materials, equipment, tools and construction equipment and machinery, including reasonable overhead, profit and damages "to the extent of the work completed." Thus, plaintiff was properly denied lost profits since, given the contract's express terms in the case of termination, such damages were outside the contemplation of the parties. *(See, Kenford Co. v County of Erie,* 67 NY2d 257.) We have examined the other contentions and find them to be without merit. Concur—Sullivan, J. P., Wallach, Kupferman, Asch and Tom, JJ.