[697 NYS2d 280]

Ike Quartey et al., Respondents, v AB Stars Productions, S. A., Appellant, and Square Ring Productions, Inc., et al., Respondents.

First Department, November 9, 1999

## APPEARANCES OF COUNSEL

*Scott N. Gelfand* of counsel (*Meister, Seelig & Fein, L. L. P.,* attorneys), for Ike Quartey and another, respondents.

*Gil Feder* of counsel (*Russell M. Sachs* on the brief; *Fischbein Badillo Wagner Harding,* attorneys), for appellant.

*Richard A. Roth* of counsel (*Gary M. Heller* on the brief; *Littman Krooks Roth & Ball, P. C.,* attorneys), for Square Ring Productions and another, respondents.

## OPINION OF THE COURT

WALLACH, J.

Some of boxing's most interesting bouts take place öutside the ring.

Plaintiff Quartey is an erstwhile holder of, and current contender for, the welterweight championship of the World Boxing Association (WBA). Defendant AB Stars Productions is the French prizefight promoter that discovered Quartey in his native Ghana in 1992, and brought him to pugilistic prominence. Plaintiff Asah, a fellow Ghanaian, is Quartey's manager. Quartey's early fights were arranged and promoted by AB Stars under an agreement signed in October 1992. The high point of this relationship was when Quartey captured the welterweight crown from then-champion Cristano España in a 1994 bout in France. Plaintiffs thereafter pressed for a more lucrative arrangement, leading to a new promotion contract, signed in February 1996, that contemplated title defenses against such boxing notables as Vince Phillips, Oba Carr, Pernell Whitaker and Oscar de la Hoya.

Seeking a still more lucrative arrangement, plaintiffs then allegedly demanded that defendants Square Ring Productions (a Florida corporation) and New Jersey Sports Productions (doing business as Main Events) be hired as co-promoters. Unlike AB Stars, both of these American promoters are licensed with the New York State Athletic Commission (NYSAC). Plaintiffs further demanded that the site of the Oba Carr fight be switched from France to New York. Faced with the prospect of losing Quartey altogether, AB Stars, without the benefit of

American counsel, entered into a new agreement with plaintiffs in September 1996, acceding to all of these demands. This latest agreement contemplated a minimum of seven fights worldwide, with net profits to be distributed among the three promoters as follows:

|  | AB Stars | New Jersey Sports | Square Ring |
|---|---|---|---|
| Fight No. 1 | 50% | 50% | — |
| Fight Nos. 2-3 | 40% | 35% | 25% |
| Fight Nos. 4-7 | 30% | 25% | 45% |

The New Jersey Sports attorney who drafted the agreement insisted on insertion of a New York "choice of law" clause.

The first bout under this new agreement was Quartey's successful title defense against Oba Carr at Madison Square Garden in October 1996, for which contest Square Ring was identified with NYSAC as the licensed promoter. Two other bouts took place out of State—a successful title defense in Las Vegas against Ralph Jones, and a draw with Jose Luis Lopez in Connecticut. For these three fights, Quartey received $600,000, $700,000 and $800,000, respectively, plus training expenses and a portion of Square Ring's promotional revenues.

New Jersey Sports, which also represented Pernell Whitaker, was desirous of promoting a fight between the two, but AB Stars objected when it became clear that it was to be squeezed out of the picture. The Quartey-Whitaker bout became academic when Whitaker failed a drug test. In February 1998, after the attorney representing both Quartey and Square Ring threatened a lawsuit to invalidate the September 1996 agreement, plaintiffs brought this action, alleging that that agreement had been made under duress. A month later, New Jersey Sports entered into a new agreement with Quartey to be the fighter's sole promoter.

After cancellation of the Whitaker fight, the WBA required Quartey to fight the No. 1 contender, Andre Pestriaev. New Jersey Sports allegedly did its best to frustrate AB Stars' promotion of that fight, including bidding against AB Stars for the promotion rights, refusing to disclose Quartey's whereabouts in the period leading up to the scheduled date of the fight, and supporting unsuccessful legal action to force payment in advance to the fighters. AB Stars promoted the fight, scheduled for May 1998, nonetheless, securing an arena in Paris and network television coverage. When Quartey failed to show for that card, the WBA held a hearing and rescheduled

the fight for August 20. Again, this appearance was allegedly frustrated by a series of maneuvers designed to have New Jersey Sports substituted for AB Stars as the promoter of the fight, culminating in an effort to cancel the bout when it was reported that Quartey had contracted malaria. WBA doctors examined Quartey and concluded that the purported illness was fabricated. The WBA consequently stripped Quartey of his championship title.

New Jersey Sports had by this time negotiated a bout for Quartey against Felix Trinidad. Meanwhile, AB Stars received authorization from Quartey to negotiate a much more lucrative contract to fight Oscar de la Hoya. This was a match long desired by plaintiffs, and they agreed to drop their lawsuit and honor the September 1996 agreement if it came about. But then New Jersey Sports stepped in and secretly signed a contract on Quartey's behalf with de la Hoya's promoter, cutting out AB Stars but using all the terms previously negotiated by AB Stars. This way, New Jersey Sports would no longer have to share any promotional revenues with AB Stars. By separate agreement, Quartey agreed with New Jersey Sports to consider invalid any prior contract involving AB Stars, to refrain from engaging in any further deals with AB Stars without the consent of New Jersey Sports, and to continue pursuing its litigation against AB Stars. Thus using plaintiffs as their stalking horse, New Jersey Sports was able to cut AB Stars out of the picture, and at the same time keep that promoter tied up in litigation.

This action seeks a declaration that the September 1996 agreement was void and unenforceable, a preliminary injunction against AB Stars' assertion of any promotional rights with respect to Quartey, and damages for breach of implied covenant of good faith and fair dealing. Square Ring and New Jersey Sports are listed as "necessary party" defendants. AB Stars counterclaims and cross-claims for breach of contract, quantum meruit, unjust enrichment, constructive trust and declaratory relief, and further counterclaims for declaratory relief, and further cross-claims for interference with business relations, contribution and indemnification. The IAS Court denied AB Stars' motion for summary judgment validating the September 1996 agreement, for a constructive trust over promotional revenues derived from the de la Hoya fight, and for leave to amend its counter- and cross-pleadings to include damages for two canceled bouts in Europe. Instead, it granted plaintiffs' cross motion for summary judgment declaring the September 1996 agreement void. AB Stars appeals.

New York, by regulation, prohibits anyone from promoting a boxing contest without being licensed for such purpose by NYSAC (19 NYCRR 207.17). All promotion contracts are to be filed with NYSAC within 48 hours of execution, and at least 10 days prior to the contest (19 NYCRR 208.16). Indeed, "[a]ll parties to any contracts or negotiations pertaining to a contest or exhibition to be held *in New York* must be licensed by the commission, unless otherwise directed or authorized by the commission." (19 NYCRR 208.14 [emphasis added].)

The insertion of a New York choice-of-law provision in the September 1996 agreement had no effect whatsoever on fights taking place outside New York State (*Zwirn v Galento*, 288 NY 428; *Gregory v Scorcia*, 493 F Supp 984 [SD NY]).[1] There is nothing illegal per se about this contract. The fact that co-promoter AB Stars was not licensed in New York did not invalidate those aspects of the September 1996 agreement pertaining to fights in Las Vegas, Connecticut, or anywhere else outside the Empire State.

As to the one fight that took place in New York (and any future bouts within the venue), it would appear that AB Stars, as the promoter who brought Quartey to this pinnacle, did what any law-abiding out-of-State agent would do under the circumstances, namely, comply with local law by entering into an agreement with a promoter who *is* licensed in New York. The NYSAC regulations requiring a New York-licensed promoter do not mandate, as a matter of law, the invalidation of the agreement by which plaintiffs and AB Stars brought in such an agent. The regulations requiring a boxing promoter to be locally licensed are merely *malum prohibitum* (*see, Rosasco Creameries v Cohen*, 276 NY 274). Summary judgment was erroneously granted to plaintiffs on their first cause of action.

If the act of bringing in two local co-promoters was merely a front to conceal AB Stars' true control of the promotion in New York, such an attempt to evade New York licensure requirements might well render the contract illegal and unenforceable. At the very least, those aspects of the contract that allegedly run afoul of the New York regulatory scheme would have to be severed and condemned, without prejudice to enforcement of those terms pertaining solely to lawful objectives (*McCall v Frampton*, 81 AD2d 607, 608). The only fight that

---

1. Our courts are not alone in holding that a contractual choice of New York regulatory law does not apply to activity outside the State (*see, Peugeot Motors v Eastern Auto Distribs.*, 892 F2d 355 [4th Cir], *cert denied* 497 US 1005).

did take place in New York State—the October 1996 title defense against Oba Carr—required the filing of the contract with NYSAC, which was done by the New York-licensed co-promoter (Square Ring). Whether AB Stars functioned as a silent co-promoter of the New York event who engaged in promotional activities[2] here, and whether such activity transgressed any New York boxing regulations, presents at best a triable issue, but only with respect to AB Stars' entitlement to any share of the New York bout proceeds. The contract was in all other respects acceptable to NYSAC. There is certainly a presumption that plaintiffs intended the Oba Carr bout to take place in a manner consistent with New York law and regulations (see, Telemark Constr. v Greenberg, 205 AD2d 438, 440). A factfinder would have to be convinced that plaintiffs were somehow damaged by the failure of a nominal (albeit compensated) co-promoter of that fight to be licensed with NYSAC in accordance with the New York choice of law.

The NYSAC regulations are designed to protect the fighter with respect to not only his personal safety and well-being, but also his financial interests. Plainly and simply, this is a dispute among promoters, the outcome of which will not affect Quartey's contractual share of the proceeds one way or the other. Plaintiffs allege no impropriety in the involvement of Square Ring and New Jersey Sports, the two co-promoters who *were* licensed in New York. Indeed, there is an inference that these nominal defendants are the real parties in interest behind this lawsuit, whose goal is to freeze out the foreign promoter. If this be the reality which has inspired this litigation, it will become apparent during the trial that we now direct, and then another legal principle may well be triggered. AB Stars is, after all, a foreign company that may establish its entitlement to a reasonable reliance upon co-promoters Square Ring and New Jersey Sports to obtain all necessary documentation, including licenses, for domestic fights.

Courts are reluctant to void a foreign corporation's contract that is suddenly challenged because of the corporation's failure to obtain a domestic license. In Tetra Technologies v Harter (823 F Supp 1116 [SD NY]), a Texas engineering firm brought a breach of contract action against a village in New York. The defendants argued that the contract was illegal because the plaintiff was not locally licensed. In finding the contract valid and enforceable, the court noted (supra, at 1119) that "[t]he

---

**2.** The NYSAC regulations define a "promoter" as one who "produces, arranges or stages" the contest or exhibition (19 NYCRR 205.1[m]).

out-of-state contractor, not the institutional local customer, is the victim of surprise when a question based upon licensing or other state or local requirements is raised subsequent to performance. The New York courts have been at pains to prevent, and not to encourage, surprises sprung upon less knowledgeable contracting parties." In so ruling, Judge Broderick expressed confidence that New York's highest court would heed the admonition that " '[n]o man should profit from his own inequity or take advantage of his own wrong' " (*supra*, at 1119).[3] And, if the real dispute among the parties is simply the proportionality of the sharing of revenues, based upon each co-promoter's share of the work, this again involves a triable issue of fact.

Finally, AB Stars was forced to cancel two bouts it had scheduled and promoted for Quartey in France. AB Stars sought to amend its answer to counterclaim for breach of contract, and to cross claim for tortious interference with contract. Under our liberal rules of pleading, this amendment should have been granted (*Prote Contr. Co. v Board of Educ.*, 249 AD2d 178).

We have examined the remaining contentions of the parties, and find that they do not merit separate treatment.

Accordingly, the order of Supreme Court, New York County (Charles Ramos, J.), entered February 5, 1999, which denied defendant AB's motion for summary judgment and for leave to amend its counterclaims and cross claims, and granted the remaining parties' cross motion for partial summary judgment on plaintiffs' first cause of action, declaring the September 1996 agreement void, should be modified, on the law, the cross motion denied, the declaration voiding the September 1996 agreement vacated, defendant AB Stars granted leave to amend its counterclaims and cross claims, the matter remanded for further proceedings, and the order otherwise affirmed, without costs.

ROSENBERGER, J. P., WILLIAMS, TOM and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered on or about February 5, 1999, modified, on the law, the cross motion denied, the declaration voiding the September 1996 agreement vacated, defendant AB Stars granted leave to amend its counterclaims and cross claims, the matter remanded for fur-

---

3. Quoting Cardozo, The Nature of the Judicial Process, at 41 (1921).

ther proceedings, and the order otherwise affirmed, without costs.